School District v. Shadduck.

SCHOOL DISTRICT NO. 1, RENO COUNTY, *et al.*, v. R. B. SHADDUCK.

1. SCHOOL BOOKS, *Illegal Adoption of; Injunction.* Where a school board first adopts Appleton's readers to be used in the public schools of the district, and in less than five years thereafter, and without any petition therefor, illegally adopts McGuffey's revised readers, to be used in place of Appleton's, and a private citizen, who is a resident and tax-payer of the district, and a patron of the public schools therein, and who has a minor son whom he wishes to have study reading in Appleton's fifth reader at such public schools, commences an action against the school district, the school board and the principal of the schools, for an injunction to restrain them from using McGuffey's revised readers in the schools, *held*, that he is not entitled to such an injunction.

2. INJUNCTION, *When Allowed.* Under some circumstances an injunction might be allowed, at the instance of a private individual, to restrain the use of McGuffey's readers in a public school, (provided McGuffey's readers had not been legally adopted,) so far as their use might interfere with the plaintiff's or his child's use of some one of Appleton's readers as a text-book in such school, provided Appleton's readers had been legally adopted.

3. INJUNCTION, *When Not Granted.* But where the order of the school board adopting readers provides merely for adopting "Appleton's readers," without further defining what is meant by the use of the words "Appleton's readers," and without designating what edition, or what kind of first, second, third, fourth or fifth readers of Appleton's is intended, and the plaintiff desires that his child shall use one of Appleton's fifth readers as a text-book in the public schools, and it appears that there are at least three kinds of Appleton's fifth readers, each different from each of the others in important particulars, some of the differences being differences in the subject-matter of the lessons, *held*, that even the injunction mentioned in syllabus No. 2 will not be granted.

4. ———— An injunction for the protection of the interests of the entire public can be granted only at the instance of the proper public officer.

*Error from Reno District Court.*

NOVEMBER 9, 1880, *R. B. Shadduck* filed in the district court of Reno county his petition (court and title omitted) as follows:

"Plaintiff says that he is a resident, tax-payer and patron of the public schools in School District No. 1, in Reno county,

state of Kansas; that said school district is a duly-organized school district of said county and state, and is hereby made one of the defendants in this cause; that the said N. T. P. Robertson is director, A. R. Scheble treasurer and S. B. Zimmerman clerk of said district, and J. J. McBride principal of the schools in said district, and are also made parties defendant; that during the month of May, 1879, the legal school board of the district, pursuant to the statutes of the state of Kansas, adopted a uniform series of text-books to be used in said district, including Appleton's readers; that said series was so adopted for the term of five years from said month of May, 1879; that at a meeting of the school board of said school district, held sometime in the month of October, 1880, the said school board, contrary to law, and without any petition being presented therefor signed by four-fifths of the legal voters of the district, and without any petition whatever therefor, made an order changing the series of readers in said district, and adopted a series known as McGuffey's revised readers; that plaintiff, on the 8th day of November, 1880, being desirous of sending his minor son, who is of the age of eighteen years, and entitled to the privileges of the schools in said district, to the public schools of said district, furnished to his said son a set of school books, including Appleton's fifth reader, and sent him to the public schools of said district; that his son was then informed by the superintendent of said schools, the principal thereof, the defendant J. J. McBride, that Appleton's readers were not the series adopted by the school board of the district, but that he must procure a fifth reader of the McGuffey series; that he refused to teach his said son in reading in Appleton's fifth reader, which book had been furnished by plaintiff, and which was the legal book adopted by the school board of the district; that as yet the said district has not fully introduced McGuffey's revised readers into said district, but is threatening so to do; that the plaintiff prefers the use of Appleton's reader; that as a patron of the school he has not consented to the change of school books in said district; that by the change he will be compelled to purchase a McGuffey's reader; that he cannot obtain the advantages of instruction in reading in said school unless he purchases a reader which he does not prefer, and which has not been legally adopted; that by the change he will be compelled to suffer pecuniary loss, and lose the advantages of the instruction in reading in said school, to which he is entitled

as a resident tax-payer in said district, and a patron of the public schools therein.

"Therefore plaintiff prays that this honorable court issue a temporary order of injunction to restrain the said School District No. 1, Reno county, state of Kansas, N. T. P. Robertson, director, S. B. Zimmerman, clerk, and A. R. Scheble, treasurer, of said district, and J. J. McBride, principal and teacher of said schools, from proceeding further with the introduction of McGuffey's revised readers into the schools of said district, and to restrain the said parties from the further use of McGuffey's revised readers in the schools of said district, and that on the final trial of this cause such injunction be made perpetual; and for such other and further relief as plaintiff may be entitled to, and for costs."

Upon this petition, which was duly verified by the plaintiff, and the following orders and affidavits, together with some other evidence, the court below granted a temporary injunction. The order of the school board adopting Appleton's readers reads as follows:

"HUTCHINSON, May 5, 1879.

"At a meeting of the district board of said district, held this 5th day of May, 1879, the following series of books were adopted for use in the schools of said district, to be introduced and to remain in use for five years from the date of said adoption and introduction, as provided for in section 28, article 4, of chapter 122, entitled 'An act for the regulation and support of common schools,' approved March 12th, 1879: Appleton's readers, Swinton's word primer and word-book spellers, Robinson's shorter course in arithmetic, Swinton's geographies, Harkness's Latin grammar, Swinton's condensed U. S. history, Bryan & Stratton's book-keeping, Hitchcock's physiology, philosophy, Hooker, chemistry, Hooker, geology, Hooker, entomology, Hooker, physical geography, Guyot, Webster's dictionary, drawing, Kruis, Gray's botany, Robinson's geometry, Robinson's algebra, ancient history, Swinton's Spencerian penmanship, German, Woodbury, Riddle's shorter course in astronomy, Potter's elocution."

It seems to be admitted that this order was regularly and properly adopted. The order substituting McGuffey's revised readers for Appleton's readers, which was adopted by the school board October 30, 1880, reads as follows:

"*Whereas*, It appears to this school board that there is not

a uniform series of readers in use in the public schools in this district:

*Be it resolved,* By this board, that we hereby adopt and order the immediate use of the McGuffey's revised eclectic readers in all the departments of said school, on the proposition of the publishers of said books, this day made to this board."

This order was made by the board without any petition having been first presented to it. On November 17, 1880, the school board adopted another order adopting McGuffey's revised readers, which order reads as follows:

"HUTCHINSON, KANSAS, Nov. 17, 1880.

"*Whereas,* The board of School District No. 1, Reno county, Kansas, adopted McGuffey's revised readers for the public schools of said district; and whereas, a question has been raised as to whether or not the action of the board in adopting McGuffey's readers was legal: Now, in order to settle disputes as to the said legal question, this board having before it a petition for the use of McGuffey's revised readers in the public schools, which said petition is signed by more than four-fifths of the legal voters of said school district, as proven by affidavits thereto attached, and ascertained by this board to be legal in every respect, does hereby readopt McGuffey's revised readers as a uniform series of readers to be used in said public schools, and in place of Appleton's or any other readers; and this action is taken by virtue of the authority vested in this board by law, and by virtue of said petition aforesaid, presented to and acted on by this board."

The foregoing order was made upon a petition, which the defendants claim was sufficient. They claim that it was signed by and contained the names of four-fifths of all the legal electors of the district. The plaintiff, however, claims that the petition was not sufficient, and his evidence seems to show that there were about 950 legal electors in the district, and that only about 600 of them signed the petition. The affidavit of the defendant, N. T. P. Robertson, which was read on the hearing of the application for the temporary injunction, is as follows:

"N. T. P. Robertson, of lawful age, being duly sworn, says that he is director of School District No. 1, and also one of the defendants herein; that the board of said district (affiant one of its members) found that there was no uniform

series of readers in the public schools of said district; that
Appleton's readers were in use, but the same were not uni-
form for the reason that several editions of Appleton's readers,
published in quick succession, had been promiscuously thrown
on the market; that said editions were the same in appear-
ance and binding, but greatly different in words, figures,
phrases, sentences, lessons and arrangement, so as to make
concert reading nearly impossible and causing great confusion
and loss of time to teachers and pupils, and seriously impair-
ing the study of reading in said schools.    The board also
found that Appleton's readers published the same year, and
apparently the same edition, were dissimilar in material re-
spects.    Also, the board was informed by the agent of Apple-
ton that when a new edition was published the old edition
was discontinued by Appleton, and the board knew that two
editions of Appleton's readers were published after May, 1879,
and that the new editions of Appleton's readers were sold
with the old (when any old were on hand) indiscriminately
and confused together, and that the difference could be de-
tected only by comparison of text and arrangement—a care
which patrons and pupils did not exercise, and in some in-
stances could not.    There was no evidence before the board
and nothing in the record to show that any series of readers
had ever been adopted by the board.    Under this state of
facts, and on recommendation of the teachers, the board
adopted a uniform series of readers known as McGuffey's
revised, and in order that the patrons and pupils of the schools
be put to no expense, stipulated that the new books be ex-
changed for the old, which change can be effected, book for
book, and has been effected in all cases unless it be in the case
of R. B. Shadduck, who chose not to exchange; and McGuf-
fey's readers are now established in the schools and giving
satisfaction.    Affiant says that the said R. B. Shadduck, by
exchanging the old book for a new book, will be supplied
with the new reader, McGuffey's revised, and instead of be-
ing put to any expense he will make the difference between
a new book and an old book.    Affiant also says McGuffey's
revised is a better reader than Appleton's.    Affiant further
says, that at the time plaintiff's son went to the school house,
referred to in the petition, McGuffey's readers were there, and
he could have gotten a new book for the old without expense had
his father chosen to permit him to make the exchange.    Affiant
has no means of knowing whether Appleton's readers were

ever adopted to be used in said schools, and therefore denies that they ever were. Affiant further says that the Appleton readers in said schools are now all exchanged and gone, and the pupils of said schools are armed with McGuffey's revised, and that if the said last-named readers are enjoined from further use the study of reading in said schools will be stopped until new books are procured, which will cause great confusion and expense."

The affidavit of the defendant, J. J. McBride, which was also read on the hearing of the application for the temporary injunction, is as follows:

"I am principal of the public schools of District No. 1, Reno county, Kansas; I have read and examined and studied the readers known as Appleton's. The difference between the editions in punctuation, figures, words, phrases, sentences, paragraphs, lessons and arrangement, is great. In two editions of the first reader there are 65 changes by omission, omission and substitution, and by transposition of paragraphs; in two editions of the second reader there are 700 changes, counting those in punctuation; and in two editions of the third reader over 500 changes occur. In the fourth reader are many changes, and also in the fifth reader. In support of my affidavit in whole or in part, I herewith furnish a lot of Appleton's readers containing changes marked with red ink. Said books are marked 'A,' 'B,' 'C,' 'D,' 'E,' 'F,' 'G,' 'H,' & 'C,' said readers being the same as have been used in the public schools. Of course I did not mark all the changes which occur, but simply a sufficient number to illustrate. Some of the books of the same edition are materially dissimilar."

The following are the affidavits of the undersigned teachers of the schools of said school district:

"The undersigned hereto on their oaths say: That they are teachers in the public schools of District No. 1, Reno county, Kansas, duly employed by the district board of said school district, and as such employés they are engaged in instructing about 420 pupils in said public schools, and are acquainted with the text-books used in each branch of study in said schools, and particularly with the readers now in use and those which have been in use. These affiants say that the series of readers now in use is McGuffey's revised, which is uniform, and satisfactory in every particular; that prior to

the adoption of McGuffey's revised readers, Appleton's readers were used in said schools, and that the said readers were not uniform; that there are three more editions of Appleton's readers, at least two of which have been published since the alleged time of the alleged adoption of Appleton's series of readers in the said schools; that these editions differ one from the other greatly, in words, letters, in lessons and arrangement, as shown by the affidavit of J. J. McBride, and the books themselves, to which reference is hereby made; that as fast as one edition was published, it was thrown on the market to supplant the old; that the said editions were indistinguishable in appearance, and could not be distinguished one from the other save by special examination and comparison of the text; that said books were sold promiscuously (as to editions) to dealers, and by dealers to pupils, and in consequence the pupils of said schools had all the various editions, and, by reason of the various differences hereinbefore stated, the said varied editions of said readers produced in the said schools an utter want of uniformity in readers, resulting in confusion to the teachers and to the pupils, also in the loss of time, and the making it impossible to teach concert reading in said schools, and for the pupils to advance generally in that branch of study as rapidly and thoroughly as they should advance; that owing to the state of facts above detailed, the affiants, as teachers, in duty to themselves and patrons of said schools, sought and recommended that a uniform series of readers be adopted therein. Affiants further say, that they are informed, and believe, that the edition of Appleton's readers alleged to have been adopted and introduced into said schools is not now published, and has not been since the publication of the first of the two succeeding editions; and these affiants know from personal examination and experience that the changes in words, figures, sentences, phrases, lessons and arrangement are so numerous and radical that the said later editions are in fact distinct and different books from the edition in existence at the alleged time of the alleged adoption into the schools; also, that the said two late editions not only differ from the prior as aforesaid, but that they are equally different from each other. These affiants further say, that it would be impossible for the pupils of said schools to get books of the edition in existence at the alleged time of the alleged adoption of Appleton's readers, save at great expense and trouble, if they could do so at all, and that

the parents of said pupils would not all get said edition, even if it were possible, and they were required to do so by us.

> Lizzie Hellowell.
> J. J. McBride.
> Ada M. Bell.
> Jessie Hale.
> Lou. Chrisman.
> Fannie Oakes."

To the foregoing affidavit was suffixed the following affidavit:

"The undersigned say that they were teachers in the schools of District No. 1, last year, and that the same troubles detailed in the above affidavit then existed.

> Lizzie Hellowell.
> Fannie Oakes.
> Lou. Chrisman."

December 2, 1880, the judge of the district court granted a temporary order of injunction as prayed for by plaintiff. The defendants bring the case to this court.

*Whiteside & Campbell,* and *McKinstry & Scheble,* for plaintiffs in error.

*Houk & Brown,* and *F. E. Gillett,* for defendant in error.

The opinion of the court was delivered by

Valentine, J.: This was an action brought by R. B. Shadduck against School District No. 1 of Reno county, Kansas, and the school-district board, and also against the superintendent and principal of the schools of such district, to perpetually enjoin them from using McGuffey's revised readers in the public schools of that district. The petition alleges, among other things, that the school board first adopted "Appleton's readers" to be used in said schools; and afterward, within less than five years, and without any petition therefor, illegally attempted to adopt McGuffey's revised readers for the use of said schools; that the plaintiff, who was "a resident, tax-payer and patron of the public schools in said school district," furnished his minor son, who was then of school age,

with one of Appleton's fifth readers, "the legal book adopted by the school board," and sent him to the schools of the district to be taught reading by the use of such book; but that the superintendent and principal of the schools refused to let him use Appleton's fifth reader, and told him he must get McGuffey's revised fifth reader. The prayer of the petition is as follows:

"Therefore plaintiff prays that this honorable court issue a temporary order of injunction to restrain the said School District No. 1, Reno county, state of Kansas, said N. T. P. Robertson, director, S. B. Zimmerman, clerk, and A. R. Scheble, treasurer of said district, and J. J. McBride, principal and teacher of said schools, from proceeding further with the introduction of said McGuffey's revised readers into the schools of said district, and to restrain the said parties from the further use of said McGuffey's revised readers in the schools of said district, and that on the final trial of this cause such injunction be made perpetual, and for such other and further relief as plaintiff may be entitled to, and for costs."

The court below allowed the temporary injunction, as prayed for in plaintiff's petition. The sole question now presented for our consideration is, whether this temporary injunction was rightfully allowed or not. That it is too broad, must be admitted. That it covers too much ground, cannot be denied. But is it right in any particular or to any extent? It enjoins the use, not only of McGuffey's revised readers, but it also enjoins the use of all of McGuffey's readers, whether of the first, second, third, fourth, fifth or other number; and it enjoins the use of all these readers, not only by the plaintiff's boy, but by all boys and girls too who may attend the public schools of that district. It proscribes the use of said readers, not only in the plaintiff's son's class, but also in all other classes of his school, and in all classes of all the public schools of his district. Even if all the parents and children of the district, and all the school-district officers, and the teachers, and all others interested in the public schools of that district, except the plaintiff, should desire to use McGuffey's revised readers, this injunction prevents them from doing so. Even if some parent should desire that his or her little girl should

study one of McGuffey's revised *first* readers in one of the primary schools of the district, this injunction prevents it, and simply because the plaintiff desires that his son should use one of Appleton's *fifth* readers in some. higher class of some one of the other schools of the district. And this temporary injunction also proscribes the use of McGuffey's revised readers, not only as text-books, but for all purposes. It does not allow one of McGuffey's revised readers to be used in the schools in connection with Appleton's for the purpose of illustrating the various views of authors upon the same subject, or the various styles of written composition, or the various modes of punctuating the same composition, or the various rules for using capital letters· or italics, or for emphasis, modulation, inflection or cadence. It really·interdicts the use of McGuffey's revised readers for all purposes and by all school children, absolutely and entirely.

But why should it interdict the use of· McGuffey's readers at all? The plaintiff is not interested in excluding McGuffey's readers, but only in having Appleton's fifth reader used as a · text-book in the class in which his son may be placed. And yet this temporary injunction has nothing to say concerning Appleton's readers, and all to say about McGuffey's revised readers. Now the exclusion of McGuffey's revised readers does not bring Appleton's readers into the schools. The exclusion of all of McGuffey's· readers, revised or otherwise, does not do so. Indeed, the exclusion of all readers, McGuffey's and others, would not necessarily introduce Appleton's. And yet, as to Appleton's readers, this temporary injunction is silent. The plaintiff's true remedy is by mandamus, to compel the school board and the teachers to allow the plaintiff's son to use Appleton's fifth reader as a text-book. But under the facts of this particular case, he might find it difficult to maintain even this remedy. In this state the school board, in adopting text-books, has authority to adopt only "a uniform series of text-books," (Laws of 1879, p. 279; Comp. Laws 1879, p. 831, § 28;) and in this particular case it does not appear that the board adopted "a *uniform* series of text-

books," when it adopted "Appleton's readers." The board adopted these readers without further defining or designating what was meant by the use of the words, "Appleton's readers."

Now it appears from the evidence introduced on the hearing of the application for the temporary injunction, that there was no "uniform series" of "Appleton's readers," of any particular number or in the aggregate. For instance, three of Appleton's fifth readers were introduced in evidence, and are now before us, one dated in 1878, and the other two in 1879, and each is different from each of the others; not wholly different, but different in important particulars. Indeed, all the three look alike, and the differences can be ascertained only by a careful examination. Some of these differences, however, are very important, such as differences in the subject-matter of the lessons. The evidence below also tends to show that still later editions of these books, with still other differences, have been published. Now as the board can adopt only "a uniform series of text-books," which of these various editions did it adopt, or did it legally adopt any? If we were to compel the board and teachers by mandamus to use any one of these three fifth readers which are now before use, which one of them should we compel them to use? With these doubts and difficulties, is not the order of the board adopting "Appleton's readers" void for uncertainty? The plaintiff says that the fifth reader which his son took to school was "the legal book adopted by the school board." Now how does he know this? And how are we to know it? Of which edition was it? We have the order of the board adopting "Appleton's readers" before us, and the order merely uses the words, "Appleton's readers." It does not designate which fifth reader is intended, and therefore no one can tell whether the plaintiff's son's fifth reader was "the legal book adopted by the school board," or not. But the plaintiff is not asking for a writ of mandamus to compel the board and teachers to permit his son to use Appleton's fifth reader, or to use any of Appleton's readers; nor is he even asking for an injunction to restrain them from

interfering with his son's use of any of Appleton's readers; nor is he asking for any judgment or order concerning or pertaining to Appleton's readers.   He is simply asking for an order to restrain the use of McGuffey's revised readers.

Now an injunction might, under some circumstances, be allowed, at the instance of a private individual, to restrain the use of McGuffey's readers, '(provided they had not been legally adopted,) so far as their use might interfere with the plaintiff's or his child's use of some one of Appleton's readers as a text-book, (provided Appleton's readers had been legally adopted.)   But this is not the kind of injunction that was asked for or allowed in this case; and whether even this kind of an injunction could or should be allowed under the. facts of this case, is at least doubtful.   Unless we can say that it was clearly shown that the school board had previously and legally adopted the very kind of fifth reader which the plaintiff's son took to school, we cannot say that even this kind of injunction should, under any circumstances, be allowed.   A clear right must be shown before an injunction can be granted; and even then, if the plaintiff is a private individual, as in this case, the injunction can be granted only to the extent of protecting his special and individual interests.   If a general injunction is desired for the protection of the interests of the entire public, it can be granted only at the instance of the proper public officer.

The judgment of the court below will be reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

All the Justices concurring.