501 P.2d 944

Michael F. X. HOGAN, Petitioner,

v.

ARIZONA BOARD OF PARDONS & PA-ROLES/State Department of Corrections, et al., Respondents.

No. M–116.

Supreme Court of Arizona, In Banc.

Oct. 6, 1972.

Michael F. X. Hogan, in pro. per.

Gary K. Nelson, Atty. Gen., by Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for respondents.

CAMERON, Vice Chief Justice.

This is a special action filed by petitioner in propria persona questioning the actions of the State Board of Pardons and Paroles and the computation of time that he has served and will be required to serve before the completion of his sentence in the Arizona State Prison.

We are called upon to answer the following questions:

1. May the Board of Pardons and Paroles cancel previously earned good time [§ 31–251(C) A.R.S.] and double time [§ 31–252(B) A.R.S.] when a prisoner violates the terms of his release to a halfway house [§ 31–233(B) A.R.S.]?

2. Did the Board of Pardons and Paroles have sufficient evidence upon which to base its decision to cancel the previously earned statutory credits?

3. Does the Department of Corrections have discretionary power to "confiscate" the payroll checks of men living at halfway houses and apply portions of these checks to defray its costs?

4. Does the Department of Corrections have authority to refuse a prisoner, who is willing to work, a 2 for 1 job assignment when that inmate is living in the general population of the prison?

Petitioner entered a plea of guilty to the charge of armed robbery in the Superior Court of Maricopa County and was sentenced to 7 to 9 years in the Arizona State Prison commencing 20 January 1968. On 11 January 1972, three months prior to his scheduled release, defendant was sent to a halfway house in Phoenix, Arizona, and was subsequently employed by a local company. While living at the halfway house and while employed, he turned over all of his payroll checks to the Department of Corrections. On 28 February 1972, the defendant was arrested in Phoenix for investigation of an armed robbery. A gun and the amount of money stolen were found in his possession. On 5 April 1972, he was taken before the Board of Pardons and Paroles at which hearing they revoked all statutory credits of time earned by the petitioner, and a substantial portion of his earnings was applied to the cost of his room and board while living at the halfway house.

Petitioner brought a special action in this court contending that the Board of Pardons and Paroles either lacked authority to revoke his previously earned double time and good time or that there was insufficient evidence upon which to base the Board's decision.

## MAY THE BOARD CANCEL PREVIOUSLY EARNED GOOD TIME AND DOUBLE TIME?

§ 31–251 A.R.S. provides that the Superintendent of the State Prison shall require able-bodied prisoners to perform some work each day and Section B states:

"B. Every prisoner faithfully performing such labor and conforming in all re-

spects to the rules, or if unable to work, but complying in all respects to the rules, shall be allowed, if a first offender, from the minimum term of his sentence, or, if a second offender or more, from the maximum term of his sentence, a deduction of two months in each of the first two years, four months in each of the next two years, and five months in each of the remaining years of the term."

Section C of § 31–251 A.R.S. provides that if the person is guilty of any "flagrant disregard of the rules of the prison", he "shall forfeit" all the good time earned. Section D reads as follows:

"The forfeiture provided in subsection C shall only be imposed by the board of pardons and paroles after notice to the offender and proof of the offense, and shall not be imposed when the prisoner has violated a rule without violence or evil intent, of which the board shall be the sole judge."

This is the so-called "good time" in that if the prisoner conducts himself properly he is entitled to these deductions from the minimum or maximum term of his sentence as the case may be.

§ 31–252 A.R.S. provides for double time and reads as follows:

"A. A prisoner in the state prison, while working on the public highways or the prison farms as a trusty outside the prison walls and without requiring armed guards, or performing any other assignment of confidence and trust either within or without the prison walls, shall be allowed double time while so employed, and each day so employed shall be counted as two days in computing time on his sentence which shall be deducted, if a first offender, from the minimum term of his sentence, or, if a second offender or more, from the maximum term of his sentence.

"B. If the prisoner breaches the trust in any manner, the board of pardons and paroles, upon recommendation of the superintendent of the prison, may declare the double time forfeited."

This court, in the recent case of Whitt v. State of Arizona Department of Corrections, 108 Ariz. 301, 497 P.2d 514 (1972), held that once a prisoner is admitted to parole that the Board of Pardons and Paroles does not have the authority to forfeit double time earned prior to the parole after a violation of the terms and revocation of the parole. In the instant case, the prisoner was released pursuant to § 31–233 A.R.S. which allows his return to the community within 90 days preparatory to his release date. The statute reads in part:

"B. Under specific regulations established by the director for the selection of inmates, the director may also authorize temporary removal or temporary release of any inmate * * * for purposes preparatory to a return to the community within ninety days of his release date * * *. When an inmate is temporarily removed or temporarily released for a purpose preparatory to return to the community * * *, the director may require the inmate to reimburse the state, in whole or part, for expenses incurred by the state in connection therewith."

And § 31–234 A.R.S. reads in part as follows:

"C. Prisoners so transferred to a local facility may, with approval of the director of corrections, participate in programs of the facility, including work furlough rehabilitation programs. Prisoners so transferred remain in the constructive custody of the director but are subject to the rules and regulations of the facility in which they are confined."

■ Under the provisions of the statutes, the prisoner is not admitted to parole, but remains in the "constructive custody" of the prison. He is not a parolee in the terms of § 31–411, et seq., A.R.S., and the forfeiture provisions, § 31–251, subsec. D,

A.R.S., regarding good time, and § 31–252, subsec. B, A.R.S., regarding double time, may apply subject to adequate notice and a proper hearing.

## PROOF OF MISCONDUCT

■ Petitioner next contends that there was insufficient evidence upon which to base the action taken by the Board of Pardons and Paroles. The Board of Pardons and Paroles has exclusive power to grant or revoke a release to a halfway house, and assuming a proper notice and hearing pursuant to § 31–251, subsec. D, the courts will not interfere with discretion properly exercised by the Board. State ex rel. Arizona State Board of Pardons and Paroles v. Superior Court, 12 Ariz.App. 77, 467 P. 2d 917 (1970); Foggy v. Arizona Board of Pardons and Paroles, 108 Ariz. 470, 501 P.2d 942, filed October 6, 1972.

## "CONFISCATION" OF WAGES

Petitioner contends that he didn't spend all of his time at the halfway house, that he didn't eat his meals there, and that the Department of Corrections does not have authority to confiscate the payroll checks of men living at halfway houses and apply portions of these checks to defray its costs.

§ 31–234 A.R.S., under which the defendant was released, allows the prisoner to participate in the work furlough program. The statute on the work furlough program states:

"A. The work furlough administrator shall provide that all earnings of a prisoner be transmitted to the work furlough administrator." § 31–334 A.R.S.

§ 31–233, subsec. B also provides that the director may require the inmate to reimburse the State in whole or in part for expenses incurred by the State in connection therewith.

■ We therefore hold that the Department of Corrections does have authority to confiscate the payroll checks of men living at halfway houses.

## REFUSAL OF TWO–FOR–ONE WORK

■ Petitioner contends that he is ready, willing, and able to perform work as required for the receiving of two-for-one time under the provisions of § 31–252 A. R.S. This statute provides that a prisoner performing an assignment of confidence and, trust, either within or without the walls, shall be allowed double time. It is entirely discretionary within the administration of the State Prison who shall be assigned to such work. There is no absolute right to work at a position of confidence and trust in the prison. In the instant case, after the petitioner's conduct at the halfway house, the State Prison was certainly not unreasonable in failing to provide him with another position of confidence and trust and the resulting two-for-one time deduction.

Petition for special action denied.

HAYS, C. J., and STRUCKMEYER and HOLOHAN, JJ., concur.

LOCKWOOD, J., did not participate in the determination of this matter.