No. 77,916

Ronald Weinlood, *et al., Appellees,* v. Charles Simmons, Individually, and in His Capacity as Secretary of Corrections, *Appellant.*

(936 P.2d 238)

Opinion filed April 18, 1997.

*Edward F. Britton, Jr.,* of Kansas Department of Corrections, argued the cause and was on the brief for appellant.

*Stephen W. Kessler,* Director, Legal Services for Prisoners, Inc., of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

McFarland, C.J.: This is a 42 U.S.C. § 1983 (1994) action by certain inmates of the Hutchinson Correctional Facility against Charles Simmons, Secretary of the Kansas Department of Corrections, challenging the assessment of service fees against them pursuant to K.A.R. 44-5-115 (1996 Supp.). Defendant Secretary appeals from the district court's judgment that:

1. the assessment of service fees for administering inmates' trust accounts was violative of the inmates' due process rights because the fees were paid to the

crime victims compensation fund rather than used to defray costs of administration of the accounts;

2. K.A.R. 44-5-115(a) (1996 Supp.) exceeded the statutory authority granted in K.S.A. 1996 Supp. 75-52,139 when it ordered the fees to be paid to the crime victims compensation fund;

3. ordered the refunding of the service fees paid after the action was filed; and

4. granted a permanent injunction against the future collection of these service fees.

The facts underlying this action are not disputed, and the questions presented are primarily questions of law over which we have unlimited review. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

The statute at issue is K.S.A. 1996 Supp. 75-52,139, enacted in 1994 (L. 1994, ch. 227, § 10), which provides:

"The secretary of corrections is hereby authorized to adopt rules and regulations under which offenders in the secretary's custody may be assessed fees for various services provided to offenders and for deductions of payment to the crime victims compensation fund."

Based upon this statute, the Secretary of Corrections promulgated K.A.R. 44-5-115 (1996 Supp.), effective January 3, 1995, which provides:

"(a) Each inmate in the custody of the secretary of corrections shall be assessed a charge of one dollar each payroll period, not to exceed $12.00 per year, as a fee for the facility administering the inmate's trust account. The facility shall be authorized to transfer the fee from each inmate's account from the balance existing on the first of each month. In the event an inmate has insufficient funds on the first of the month to cover this fee, the fee shall be transferred as soon as the inmate has sufficient funds in the account to cover the fee. All funds received by the facility pursuant to this provision shall be paid on a quarterly basis to the crime victims compensation fund.

"(b) Every offender under the department's parole supervision, conditional release supervision, post-release supervision, and interstate compact parole and probation supervision in Kansas shall be assessed a supervision service fee of a maximum of 25 dollars per month. This fee shall be paid by the offenders to the department's designated collection agent(s). Payment of the fee shall be a condition of supervision. All fees shall be paid as directed by field service order and as instructed by the supervising parole officer. A portion of the supervision service fees collected shall be paid to the designated collection agent(s) according to the current service contract, if applicable. Twenty-five percent of the remaining amount collected shall be paid on an at least quarterly basis to the crime victims

compensation fund. The remaining balance shall be paid to the department's general fees fund for the department's purchase or lease of enhanced parole supervision services or equipment such as electronic monitoring, drug screening, and surveillance services. The department shall establish criteria for the identification of indigent offenders who shall be exempt from this subsection of the regulation. Fees as authorized by subsection (d) of this regulation shall not be considered a portion of the monthly service fee.

"(c) Each inmate in the custody of the secretary of corrections shall be assessed a fee of two dollars ($2.00) for each primary visit initiated by the inmate to an institutional sick call. A primary visit is the initial visit for a specific complaint or condition. Inmates shall not be charged for medical visits initiated by medical or mental health staff, institution intake screenings, yearly physical examinations, reception evaluations, evaluations requested by the Kansas Parole Board, referrals to a consultant physician, infirmary care, emergency treatment, mental health group sessions, facility requested mental health evaluations, or follow-up visits initiated by medical staff. No inmate shall be refused medical treatment for financial reasons. In the event an inmate has insufficient funds to cover the medical fee, the fee shall be transferred as soon as the inmate has sufficient funds in the account to cover the balance of the fee.

"(d) An offender shall be assessed a fee for each urinalysis test administered to them for the purpose of determining use of illegal substances which has a positive result. The amount of the fee shall be adjusted from time to time to reflect the actual cost of administering such tests, including staff participation."

In this action, plaintiffs challenged subsection (a) and (c). The district court found that the medical fees for inmate-initiated medical visits, K.A.R. 44-5-115(c) (1996 Supp.), did not constitute cruel and unusual punishment in violation of plaintiffs' constitutional rights. No appeal has been taken from this determination and it is not before us. The appeal herein concerns only subsection (a).

It is clear from the district court's memorandum decision that it had no problem with the basic concept of a $1 per month fee for administration of an inmate's account. If the fees were going to the State General Fund to defray the cost of administering the accounts, the district court would have upheld the imposition of the fee. The district court held that the requirement in the regulation of paying the fees collected to the crime victims compensation fund rendered the fee collection violative of the plaintiffs' due process rights and also exceeded the authority granted by K.S.A. 1996 Supp. 75-52,139. The plaintiffs' complaints relative to trust account fees also focus on the use of the fees collected (payment to the

crime victims compensation fund) rather than the right to collect fees for services provided or the reasonableness of the fees imposed.

We believe it is appropriate to split consideration of the propriety of the charge for administration of the trust accounts from consideration of the propriety of the payment of the fees to the crime victims compensation fund. See K.S.A. 74-7301 *et seq.* for fund description and operation.

The operation of the trust accounts was not a controverted fact and is summarized in the following affidavit admitted into evidence herein:

"AFFIDAVIT

"State of Kansas )
      ) ss:
County of Reno )

"I, Irlene Dick, Business Manager at the Hutchinson Correctional Facility (HCF), for the Kansas Department of Corrections (KDOC), being duly sworn according to law upon my oath, do hereby depose and state as follows:

"Inmate participation in the inmate trust fund account is mandatory under almost all circumstances. In the event the inmate enters the facility without any funds, receives no money during his stay at the Hutchinson Correctional Facility, and has absolutely no income while he is here, there would be no service charge assessed. However, it goes without saying, that the inmate would be violating the facility's rules concerning participation in programs and would be penalized in that way by having his release time set back.

"The inmates have the option, pursuant to K.A.R. 44-5-103, to engage in transactions with any financial institution, upon written authorization of the principal administrator of the Hutchinson Correctional Facility.

"The inmates who provide valid social security numbers receive interest at the passbook rate for whatever monies they have in their account.

"The variety of services which are provided for the benefit of the inmate include, but are not limited to:

 1. free monthly statement, plus unlimited extra free copies;
 2. transfer of money to new location;
 3. balance of account;
 4. copies of checks;
 5. posting of earned interest;
 6. account information, i.e., whether checks have cleared;
 7. write their checks, i.e., money to family, subscriptions, allowable items;
 8. process individual deposits and issue receipts;
 9. make their loan payments (made from IBF);

10. mail all payments;
11. make their TV lease payments;
12. make all donations to religious groups;
13. process all postage withdrawals;
14. pay all Jaycees membership dues;
15. handle special events, i.e., picture project, Christmas videos, holiday packages;
16. process canteen withdrawals;
17. process special requests, i.e., shoes, sweats, electronics;
18. special handling for handicrafts;
19. process clemency publicity advertisements;
20. maintain separate mandatory savings; and
21. post all incentive pay.

"The administrative fee does not begin to pay the total cost of performing all of these services, but it does represent contribution by the inmates to the overall cost."

The district court likened the trust account fee to a monthly checking account fee charged by a bank. It is clear that considerably more than just the servicing of a checking account is involved. The inmates live in a cashless society where all income and expenditures are channeled through their trust accounts. The amount of funds in the average inmate's account may be small, but the number of transactions to be handled and accounted for is large. There is no claim herein that a $1 per month fee to help defray the cost of administering an inmate's trust account is an unreasonable charge, and the district court did not find that it was.

"The Fourteenth Amendment of the United States Constitution prohibits a state from depriving 'any person of life, liberty, or property, without due process of law.'
. . . .
" 'The concept of due process is flexible in that "not all situations calling for procedural safeguards call for the same kind of procedure.' " *In re Petition of City of Overland Park for Annexation of Land*, 241 Kan. 365, 370, 736 P.2d 923 (1987); see *Darling v. Kansas Water Office*, 245 Kan. 45, 50, 774 P.2d 941 (1989)." *In re Marriage of Soden*, 251 Kan. 225, 234-35, 834 P.2d 358, *cert. denied* 506 U.S. 1001 (1992).

"When a statute is attacked as violative of due process, the test is whether the legislative means selected has a real and substantial relation to the objective sought. This rule has been restated in terms of whether the regulation is reasonable in relation to its subject and is adopted in the interest of the community."

*Chiles v. State*, 254 Kan. 888, Syl. ¶ 11, 869 P.2d 707, *cert. denied* 130 L. Ed. 2d 88 (1994).

Again, it should be noted that plaintiffs do not contend that the State is prohibited by the Due Process Clause of the United States Constitution from charging $1 per month for administering each inmate's trust account. The use of the fees collected is where the due process argument is aimed as it is likened to ordering restitution without an opportunity to be heard.

K.S.A. 75-5201 charges the Department of Corrections, *inter alia*, to return inmates "to private life in the communities of the state with improved work habits, education, mental and physical health and attitudes necessary to become and remain useful and self-reliant citizens . . . [and] to rehabilitate, train, treat, educate and prepare persons convicted of felony in this state for entry or reentry into the social and economic system of the community . . . ."

In testifying before the Senate Judiciary Committee hearing on March 18, 1994, on H.B. 2832, which was ultimately amended to include specific language of K.S.A. 1996 Supp. 75-52,139, defendant Secretary stated, in pertinent part:

"Assessing fees to offenders is based on a belief that offenders should be accountable for their actions, and contributing to the costs of incarceration or supervision are important components of establishing that accountability."

Prison officials are given wide latitude in matters concerning the administration of correctional facilities. Such discretion should not be interfered with by the court in the absence of abuse or unless exercised unlawfully, arbitrarily, or capriciously. See *Breier v. Raines*, 221 Kan. 439, 559 P.2d 813 (1977); *Levier v. State*, 209 Kan. 442, 497 P.2d 265 (1972).

When an inmate challenges a prison regulation as impinging on the inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. *LeVier v. Nelson*, 21 Kan. App. 2d 172, 176, 897 P.2d 188 (1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 104 L. Ed. 2d 459, 109 S. Ct. 1874 [1989], and *Turner v. Safley*, 482 U.S. 78, 96 L. Ed. 2d 64, 107 S. Ct. 2254 [1987]).

It should be further noted that inmate grievance procedures are available to all inmates in each correctional facility. See K.A.R. 44-15-101a. These extensive procedures (K.A.R. 44-15-101 *et seq.*) are applicable to a broad range of matters directly affecting the inmate, including complaints by inmates regarding policies and conditions within the jurisdiction of the institution of the Department of Corrections. K.A.R. 44-15-101a(d)(1)(A). If the Secretary incorrectly assesses fees to an inmate trust account, plaintiffs have procedures available to them to rectify such errors. These procedures provide the due process flexibility noted above. See *In re Marriage of Soden*, 251 Kan. at 234-35.

Courts in other jurisdictions have upheld a state's right to require inmates to reimburse the state for their keep and maintenance. See *Ervin v. Blackwell*, 733 F.2d 1282 (8th Cir. 1984) (no claim of entitlement to full work release salary; maintenance cost reimbursement not arbitrary state action demanding due process protection); *Scott v. Angelone*, 771 F. Supp. 1064, 1067-68 (D. Nev. 1991), *aff'd* 980 F.2d 738 (9th Cir. 1992) (although inmate interests in funds in trust account are protected property interests, pre-deprivation hearing not required before deducting medical charges); *Hogan v. Arizona Board of Pardons & Paroles*, 108 Ariz. 472, 475, 501 P.2d 944 (1972) (state may confiscate payroll checks of work furlough prisoners to help defray costs of operating program based on state statute expressly providing such authority); *Burns v. State*, 303 Ark. 64, 66-67, 793 S.W.2d 779 (1990) (law requiring forfeiture of prisoner's estate for reimbursement of costs of prisoner's care not due process violation); *Treasury Dep't v. Turner*, 110 Mich. App. 228, 312 N.W.2d 418 (1981) (earned contributions to pension fund may be seized by prison officials under state statute imposing obligation of prisoner to pay for his or her keep and maintenance); *Auditor General v. Olezniczak*, 302 Mich. 336, 4 N.W.2d 679 (1942) (prisoner's statutory obligation to pay for his or her maintenance, if there is a sufficient estate, is civil rather than criminal in nature; not unconstitutional as retroactive legislation in violation of due process law); *Cumbey v. State*, 699 P.2d 1094, 1096-98 (Okla.), *cert. denied* 474 U.S. 838 (1985)

(prison reimbursement provisions held constitutional; monetary credits awarded to inmate accounts are not wages).

We conclude the assessment of a $1 monthly service fee for administering inmates' trust accounts is not violative of the inmates' due process rights.

We turn now to the second prong of this issue—the propriety of paying the trustee account administration fees to the crime victims compensation fund. As will be recalled, the district court held that the portion of the regulation that required the payment of the fees to the crime victims compensation fund was: (1) violative of plaintiffs' due process rights and (2) exceeded the statute's grant of authority.

H.B. 2832, which ultimately birthed K.S.A. 1996 Supp. 75-52,139, was originally introduced to cut down on frivolous lawsuits by inmates. The bill was amended many times and, in final form, bore little resemblance to its original form.

The district court found that the regulation's requirement that the fees be paid to the crime victims compensation fund rather than be used to defray the costs of administration of the accounts exceeded the authority granted by the statute, K.S.A. 1996 Supp. 75-52,139. There may be merit in this position, tracing the many amendments of the bill as it proceeded to enactment. The problem with this contention in the context of this litigation is that if the fees collected are being improperly sent to the crime victims compensation fund rather than being used to defray the costs of operation of the prison, the injured parties are the taxpayers of Kansas. The amount of the fee charged for services rendered is unaffected by the use to be made of the fees collected. We have previously held that the assessment of service charges for administrating the trust accounts is not violative of plaintiffs' due process rights. Under these circumstances, can the plaintiff inmates base a § 1983 action on the use to which the funds are put or do they otherwise have standing to challenge the use made of the fees? We believe not.

42 U.S.C. § 1983 (1994) provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes

to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress."

Possible improper expenditure of service fees properly assessed and collected is not violative of 42 U.S.C. § 1983. Further, even if this were not a § 1983 action, plaintiffs have no standing to bring an action seeking to enjoin a public official relative to the utilization of the fees herein.

In *Haines v. Rural High School Dist. No. 3*, 171 Kan. 271, Syl. ¶¶ 1, 2, 232 P.2d 437 (1951), we held:

"An individual is not a proper plaintiff and cannot maintain an action for injunctive relief against abuse of power by municipal officers unless he alleges and subsequently proves that his tax burdens will be increased. Such actions must be prosecuted by the state or one of its officers charged with the responsibility of scrutinizing the acts of public officers and board."

"In order for an individual to maintain an action of the character above mentioned he must plead and prove that he has sustained special damage different in kind from that of the public generally."

Generally, an injunction will not lie at the suit of a private person to protect the public interests. *Ruthstrom v. Peterson*, 72 Kan. 679, 83 Pac. 825 (1905); *School District v. Shadduck*, 25 Kan. 467, 478 (1881); see *Boyer v. Southwestern Bell Telephone Company*, 252 F. Supp. 1 (D. Kan. 1966). A plaintiff must have a special private interest distinct from that of the public at large in order to bring an actionable claim. *Winters v. Kansas Hospital Service Ass'n, Inc.*, 1 Kan. App. 2d 64, 69, 562 P.2d 98 (1977); see *Watson v. City of Topeka*, 194 Kan. 585, 400 P.2d 689 (1965); *Foster v. City of Topeka*, 112 Kan. 253, 210 Pac. 341 (1922).

As we have held above, plaintiffs here have no private interests distinct from that of the public at large. Interests to protect the public at large must be brought by the proper public official.

We conclude the district court erred in determining:

1. The assessment of the $1 per month fee for administering the inmates' trust accounts was violative of plaintiffs' due process rights, based upon the utilization of the fees collected;

2. refunds of fees previously paid should be made; and

3. defendant Secretary should be permanently enjoined from collecting such fees in the future.

In their brief, plaintiffs argue the fee for administering the trust accounts is violative of the Ex Post Facto Clause of the United States Constitution (U.S. Const., art. I, § 10). This issue is not properly before use in this case, but has been determined adversely to the plaintiffs' position in *Roark v. Graves*, 262 Kan. 194, 936 P.2d 245 (1997).

The judgment of the district court is reversed, and the case is remanded with directions to enter judgment in favor of the defendant in accordance with this opinion.