(85 P.3d 216)
No. 91,050

NATHANIEL W. ELLIBEE, *Appellant*, v. CHARLES E. SIMMONS, *et al., Appellees*.

Opinion filed March 5, 2004.

*Nathaniel W. Ellibee*, appellant pro se.

*Julie St. Peter*, of Kansas Department of Corrections, for the appellees.

Before PIERRON, P.J., LEWIS and JOHNSON, JJ.

PIERRON, J.: Nathaniel E. Ellibee appeals the district court's summary dismissal of his petition for writ of habeas corpus.

Ellibee argues that the mandatory savings policy found in the Kansas penal system's Internal Management Policy and Procedure (IMPP) 04-103 violates his constitutional rights under the Fourteenth Amendment to the United State Constitution. IMPP 04-103 provides for a savings account in which 10% of an inmate's incoming monies less any outstanding obligations, and a specified portion of earnings from work release or private industry employment, is deposited and maintained until the inmate's release from custody. The use of the funds in the account is restricted to payment of garnishment and, only if the inmate's cash balance is exhausted, civil filing fees. IMPP 04-103 provides in relevant part:

"Mandatory Savings
"A.  Each inmate shall be required to place ten percent [10%] of all funds received from the following sources into a mandatory savings account:

1. Funds received from outside the facility;
2. Prize monies won by the inmate and paid from the inmate benefit fund; and,
   a. If canteen goods are awarded inmate prize winners in lieu of actual cash prize monies, the value of these goods shall not be subject to the mandatory savings assessment.
3. Proceeds from handicraft sales.

"B. Outstanding obligations shall always be subtracted from such monies prior to the assessment of the ten percent [10%] mandatory savings amounts.

"C. Voluntary contributions by an inmate to his/her mandatory savings account shall not be permitted.

"D. All monies deposited to a mandatory savings account shall accrue interest as outlined in this policy.

"E. All funds accrued by each inmate in his/her mandatory savings account shall be provided to the inmate upon his/her release, or, in the alternative, shall become part of the inmate's estate, subject to the provisions of IMPP 04-114, in the event that he/she dies while in custody."

In denying Ellibee's motion, the district court held as follows:

"A mandatory savings program for inmates is appropriate and legitimate. The Court sees very little difference between this program and Social Security or KPERS in respect to required participation. Even petitioner recognizes the program could be appropriate (see p. 12, para. 43 of his petition), just not in its current form. He does not believe any legitimate interests are served by a 'lifer' having to contribute to such a plan or by the permitting of court filing fees and garnishments to be deducted from the account.

"Quite the contrary, the 'lifer's' family and children may very well benefit from the 'survivor' benefits rather than having such funds squandered over the years on BBQ chips and Red Hot Piggy Pops. Further, legitimate societal and judicial purposes are well served by permitting the payment of court costs and debts through garnishment out of these funds."

An abuse of discretion standard is applied to a district court's failure to appoint counsel and summary dismissal of a motion filed pursuant to K.S.A. 60-1507. *Gilkey v. State*, 31 Kan. App. 2d 77, 78, 60 P.3d 351, *rev. denied* 275 Kan. 963 (2003); Supreme Court Rule 183(h) (2003 Kan. Ct. R. Annot. 213) (district court has "discretion to ascertain whether the claim is substantial before granting a full evidentiary hearing"). Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. *Saucedo v. Winger*, 252 Kan. 718, 730-32, 850 P.2d 908 (1993).

Prison officials are given wide latitude in matters concerning the administration of correctional facilities. Such discretion should not be interfered with by the court in the absence of abuse or unless exercised unlawfully, arbitrarily, or capriciously. See *Weinlood v. Simmons*, 262 Kan. 259, 264, 936 P.2d 238 (1997); *Levier v. State*, 209 Kan. 442, Syl. ¶ 4, 497 P.2d 265 (1972).

Ellibee argues the mandatory savings program in IMPP 04-103 violates his due process rights guaranteed under the Fourteenth Amendment to the United States Constitution. He claims IMPP 04-103 is not entirely unconstitutional, but contends several exceptions/amendments would make it reasonable and neutral, including a maximum balance of $100, exempting death row inmates and inmates with sentences extending beyond 75 years of age, and protecting accounts from fines, restitution, and garnishment. Essentially, he asks us to modify the regulation to better fit his views on the matter. Since we find no constitutional violations in the operation of the regulation, we decline.

Kansas courts have upheld mandatory deductions in inmate trust accounts. In *Weinlood*, 262 Kan. at 266, the Supreme Court held a regulation allowing the Secretary of Corrections to charge an inmate $1 a month for administering the inmate's trust account did not violate the inmate's due process rights. In doing so, it cited cases from several jurisdictions where courts have upheld a state's right to require inmates to reimburse the state for their keep and maintenance. 262 Kan. at 265; see also K.S.A. 19-1930(d) (A county may adopt a resolution that any inmate who participates in a work release or job training program for which the inmate receives compensation or a subsistence allowance shall be required to pay to the county an amount not exceeding $10 per day.).

A helpful case, decided by the Supreme Court of Oklahoma in 1985, is *Cumbey v. State*, 699 P.2d 1094 (Okla. 1985), where the court held the inmates had failed to demonstrate the existence of any legal right to personal use of, or interest in, statutory 20% compulsory savings trust account credits. The court concluded the inmates were also not unlawfully deprived of immediate personal use of funds or interest thereon in violation of state and federal constitutional standards.

"It is well established that a state may legitimately restrict an inmate's privilege to earn a wage while incarcerated. The benefits of employment during incarceration are granted by the state as a privilege and not as a right. . . . [W]hatever right Appellants have to compensation is solely by the grace of the state and governed by rules and regulations promulgated by legislative direction. The administration of our penal system involves complex problems and prison officials must be accorded latitude in the administration of prison affairs. Prisoners necessarily are subject to appropriate rules and regulations. *Cruz v. Beto,* 405 U.S. 319, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972). Penal policies are evaluated in the context of the central objectives of prison administration and constitutional protections become involved only where fundamental, humane and necessary rights are breached. Here, the alleged unconstitutional manner in which inmate accounts are established and managed within Oklahoma's penal system did not deprive Appellants of any property to which they were legally *entitled.*

"In a realistic economic sense, we find that the monetary credits awarded to Appellants' prison accounts are not 'wages' as defined in an employer-employee relationship. Inmates employed by prison industries are not state employees. 57 O.S.Supp.1984 § 545(B). The state prison industries is not a proprietary corporation, but is rather concerned with providing for the proper government, discipline, treatment, care, rehabilitation, and reformation of state inmates. In furtherance of these objectives, the state legislature may grant a favor to convicted criminals, but it may also attach such conditions to the granting of the favor as it deems proper. *Sigler, supra,* at 661. Accordingly, the Oklahoma State Legislature has granted the gratuitous payment of monetary credits to inmates' accounts in the best interests of penology and societal concerns. The inmate has no inherent legal right to the payment of this gratuity, nor to determine its form or amount. We therefore view the inmates' 20% prison accounts as conditional credits of potentially accessible funds, rather than vested property interests. The State Board of Corrections has been given full power and authority by the legislature, in the area of prison management, to engage healthy and capable inmates in productive occupations within the prison, and to potentially provide compensation in its best judgment. We find no constitutional abuse in withholding the statutory 20% of allotted credits in an account payable to the prisoner upon the event of his release. Prison officials may legitimately wish to prevent the free flow of currency within the prison system, and provide an inmate with sufficient funds upon his release to assist him in readjustment to society at large without further aid from the state treasury." 699 P.2d at 1097-98.

The court in *Cumbey* did not address the issue of an inmate serving a life sentence because: "It is for the legislature to determine whether such potentially accessible funds will inure to the benefit of the inmates' estates, or remain in the state treasury." 699 P.2d at 1098. In Kansas, pursuant to IMPP 04-103, if an inmate

dies while in custody, the money in the inmate's trust account will become part of the inmate's estate. Consequently, the inmate's funds are his or hers upon release or if the inmate dies while incarcerated, they still remain the inmate's funds, they simply pass to the inmate's estate.

When an inmate challenges a prison regulation as impinging on the inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. *LeVier v. Nelson*, 21 Kan. App. 2d 172, 175, 897 P.2d 188 (1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 104 L. Ed. 2d 459, 109 S. Ct. 1874 [1989]; *Turner v. Safley*, 482 U.S. 78, 89, 96 L. Ed. 2d 64, 107 S. Ct. 2254 [1987]). The Department of Corrections (DOC) has the full power and authority to manage the state's prisons, to encourage healthy and capable inmates in prison labor, and to provide compensation in its best judgment. Requiring 10% of incoming funds to be placed in the inmate's trust account does not violate Ellibee's constitutional rights. The DOC has a sufficient rationale for withholding the money and making it available to Ellibee upon his release or passing it through his estate upon his death. Those funds are necessary "to assist him in readjustment to society at large without further aid from the state treasury." *Cumbey*, 699 P.2d at 1098. The DOC also has legitimate reasons to prevent the free flow of currency within the prison system.

We find no constitutional or other legal infirmities in the regulation and defer to the expertise of the penal authorities and the presumed validity of the regulation.

The exact nature of Ellibee's complaint that the administrative grievance procedures violated his due process rights is unclear. It appears Ellibee claims it is a violation of his procedural due process rights that his grievance officer or prison officials did not file a response to his grievance. In its response on appeal, the Secretary of Corrections stated: "The response provided to the inmate by staff at the facility is incorporated herein by reference and made part of this response. On appeal, the inmate offers no evidence or argument that suggests that the response rendered by staff at the facility is wrong." We find no prejudice to Ellibee in the handling of his grievance and the consideration of his complaint.

We also agree with the summary dismissal of Ellibee's claims concerning certification of a class action and appointment of counsel. Both of these decisions are reviewed under an abuse of discretion standard. See *Steele v. Security Benefit Life Ins. Co.*, 226 Kan. 631, 638, 602 P.2d 1305 (1979) (Trial judges are afforded substantial discretion in determining whether a class should be certified.); *Estes v. State*, 221 Kan. 412, 413-14, 559 P.2d 392 (1977) (Our standard of review is whether the trial court abused its discretion in refusing to appoint counsel for a hearing on a 60-1507 motion.); Supreme Court Rule 183(i) (2003 Kan. Ct. R. Annot. 214) ("If a motion presents substantial questions of law or triable issues of fact the court shall appoint counsel to assist the movant if he is an indigent person."). The trial court's decision that Ellibee's 60-1507 motion did not present any substantial questions of law or triable issues of fact is upheld on appeal. Consequently, there was no abuse of discretion in the court's resolution of either the class certification or appointment of counsel issues. See *State v. Williams*, 268 Kan. 1, 8, 988 P.2d 722 (1999) (Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court.).

Affirmed.