**Creighton DELVERNE, Plaintiff,**

v.

**Sheriff Johnny KLEVENHAGEN, Defendant.**

Civ. A. No. H–92–3338.

United States District Court, S.D. Texas, Houston Division.

May 30, 1995.

Creighton DelVerne, Woodville, TX, pro se.

Eileen Cox Begle, Houston, TX, for defendant.

## *ORDER*

GILMORE, District Judge.

Creighton DelVerne ("Plaintiff") was a state inmate incarcerated at the county jail in Harris County, Texas, at the time of filing this civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff alleges that he was denied equal protection and due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution when Defendant charged Plaintiff's inmate trust account for medical services rendered. Plaintiff is seeking declaratory and injunctive relief, as well as monetary damages. The case is now before the Court on Defendant's motion for summary judgment.

Plaintiff contends that his Fifth and Fourteenth Amendment rights were violated when he was charged for medical services he received while incarcerated at the Harris County Jail. Plaintiff further asserts that he should not have to pay for medical services because he is a state inmate housed in the Harris County Jail and the costs of his maintenance, including medical care, are covered by the day rate paid by the State of Texas

(the "State") for inmates awaiting transfer to the Texas Department of Criminal Justice. Plaintiff's complaint reads in part as follows:

(4.) PLAINTIFF asserts that he is entitled to the equal protection of [Texas state laws regarding the transfer of felony backlog and medical care of inmates] which provide for his total Health Care expenses and due to the fact he has been sentenced to T.D.C.J. he is no longer a pretrial detainee, but a state prisoner.

(5.) Defendants are now charging plaintiff to visit any health care provided at H.C.J., and are also receiving funds from the state or County treasury in violation of state law and plaintiffs 5th and 14th Amendment rights to the UNITED STATES CONSTITUTION[.]

(6.) PLAINTIFF—is being deprived and denied a vital property interest, liberty rights and immunities by the acts or omissions of the defendents [sic] reckless and careless, and deliberate disregard for plaintiff's rights.

Pursuant to TEX.CODE CRIM.PROC.ANN. art. 104.002(d) (Supp.1995), prisoners in county jails are required to pay for medical, dental, or health related services they receive while incarcerated.[1] In August 1992, Harris County implemented a policy requiring non-indigent inmates in the county jail to pay a fee for medical services and prescriptions provided to them while incarcerated. Plaintiff appears to claim that the application of the policy to a state inmate housed in the Harris County Jail violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. Relying on the specific factual allegations of Plaintiff's complaint, Defendant addresses this case as one presenting only an equal protection claim. However, the Plaintiff arguably asserts a due process claim as well. Accordingly, the Court will examine Plaintiff's claims under

1. Art. 104.002(d) provides:

A person who is or was a prisoner in a county jail and received medical, dental, or health related services shall be required to pay for such services when they are rendered. If such prisoner cannot pay for such services because of indigence, as defined in Chapter 61, Health and Safety Code, said county shall assist the

prisoner in applying for reimbursement through that chapter or the hospital district of which he is a resident. A prisoner who does not meet the eligibility for assistance payments shall remain obligated to reimburse the county for any medical, dental, or health services provided and that county shall have authority to recover the amount expended in a civil action.

both an equal protection and a due process framework.

In analyzing a § 1983 claim, the Court must first determine whether plaintiff has suffered a constitutional deprivation. *Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 120–21, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992). If the Plaintiff's constitutional rights have been violated, the Court must then determine whether the Defendant is responsible. *Id.* The Court will first address the Plaintiff's claims under the Fifth and Fourteenth amendments.

### Equal Protection

Defendant asserts that Plaintiff's equal protection rights have not been violated because Plaintiff is not a member of a protected class and has not alleged the infringement of a fundamental right. Therefore, Defendant contends, the proper test under which to review the county policy is the "rational relationship" test. Under that test, Plaintiff's equal protection rights are not violated where the policy at issue is rationally related to legitimate governmental interests.

A governmental policy that operates to the disadvantage of a suspect class or impinges upon a fundamental right protected by the Constitution is subject to strict scrutiny, and will be upheld only if it is precisely tailored to serve a compelling state interest. *Plyler v. Doe,* 457 U.S. 202, 215–19, 102 S.Ct. 2382, 2394–95, 72 L.Ed.2d 786 (1982). However, where neither a suspect class nor fundamental right is implicated, the policy is examined to determine whether it rationally furthers some legitimate purpose. *Id.* at 217–19, 102 S.Ct. at 2395. Under the rationality test, the policy need bear only a rational relationship to a legitimate governmental interest in order to be sustained. *Id.*

■ In this case, the policy cannot be said to operate to the disadvantage of some suspect class. Indigent state inmates housed in the Harris County Jail are not a "suspect class." *See Hilliard v. Ferguson,* 30 F.3d 649, 652 (5th Cir.1994) (noting convicted felons are not a constitutionally protected suspect class); *Clark v. Prichard,* 812 F.2d 991, 995 (5th Cir.1987) (noting indigents are not a suspect class for purposes of equal protection review).

The policy clearly does not infringe upon a constitutionally protected fundamental right. *Seoane v. Ortho Pharmaceuticals, Inc.,* 660 F.2d 146, 149–150 n. 6 (5th Cir.1981) (noting that only privacy, marriage, certain voting rights, travel and freedom of association are recognized fundamental rights).

■ Plaintiff has not shown that he is a member of a suspect class or that the policy infringes a fundamental right. Accordingly, the policy requiring non-indigent inmates to pay for certain medical services must be analyzed under the rational basis test. That is, the challenged policy will survive an equal protection analysis if it bears a rational relationship to a legitimate end. *Hilliard,* 30 F.3d at 652.

Defendant's policy satisfies this minimal threshold. Defendant advances several legitimate governmental reasons for the policy of charging all inmates for medical expenses, including state inmates housed in the Harris County Jail. The reasons stated by Defendant are that (1) TEX.CODE CRIM.PRO. § 104.002(d) does not exempt state inmates from its provision; (2) exempting state inmates from the policy would impose an unreasonable administrative burden; (3) one goal of the policy was to curtail frivolous requests for medical services; therefore, exempting state inmates would frustrate that goal of the policy; and (4) exempting state inmates imposes an unfair tax burden on Harris County taxpayers. As an example, Defendant argues that the Harris County Jail houses roughly nine thousand inmates every day in four separate jail facilities. Due to daily changes in the jail population as well as changes in pretrial or post-trial status of that population, determining the status of every inmate seeking medical care would create an undue administrative and financial burden. Administrative convenience has been held to be a rational basis under the equal protection clause. *Green v. McKaskle,* 788 F.2d 1116, 1125 (5th Cir.1986). Because the policy at issue in this action is rationally related to a legitimate governmental interest, no equal protection violation has occurred.

*Due Process*

Although Defendant addresses only the absence of an equal protection violation, Plaintiff's pleadings could also be fairly read to claim that he was denied due process of law as guaranteed by the Fourteenth Amendment when Defendant charged Plaintiff's inmate account for medical services.

■ The Fourteenth Amendment prohibits the government from depriving persons of property without due process of law. The threshold inquiry for this case is whether a protected property interest is involved. *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). An inmate has a protected property interest in funds in his inmate trust fund account and cannot be deprived of those funds without due process. *E.g., Gillihan v. Shillinger,* 872 F.2d 935, 939 (10th Cir.1989); *Scott v. Angelone,* 771 F.Supp. 1064, 1067 (D.Nev.1991), *aff'd,* 980 F.2d 738 (9th Cir.1992); *Brewer v. Collins,* 857 S.W.2d 819, 823 (Tex.App.—Houston [1st Dist.] 1993); *see also Eubanks v. McCotter,* 802 F.2d 790 (5th Cir.1986).

Having determined that a protected interest exists, the Court must decide what process is due. This is a question of law and therefore appropriately determined by summary judgment. *See Alberti v. Klevenhagen,* 790 F.2d 1220, 1224 (5th Cir.1986); *Hatton v. Wicks,* 744 F.2d 501, 503 (5th Cir.1984).

Article 104.002(d) of the Texas Code of Criminal Procedure requires prisoners in county jails to pay for health related services they receive while incarcerated. The policy implemented by Harris County requires inmates to pay between ten and sixteen dollars per visit to see a medical professional. Inmates are also charged three dollars for each prescription filled by the pharmacy. Similar charging schedules are in place for dental, optometry or dietician services.

Defendant recites that the fees are not charged until after a service is rendered, and only when the inmate has signed a document authorizing the charge to his inmate trust account. Following each time medical services are provided, an inmate may claim to be indigent. If it is determined that the inmate is indigent, he is not charged. If, however, the inmate is not declared indigent, either because he did not apply for indigent status or because his application was denied, the inmate's trust fund is debited for the medical services provided even if the charge creates a negative balance. The policy states that no inmate will be denied medical care based on his indigent status.

The fact that an inmate may be declared non-indigent even though he has no funds in his prison account raises concerns about the method and criteria used for determining indigence—namely, whether that method comports with due process. Defendant fails to support his motion with evidence of the actual procedure followed for determining whether the inmate is indigent. Although Defendant asserts that the policy specifically provides that no inmate will be denied health care services if he indicates an inability to pay, Plaintiff contends that he was in fact charged for medical services even when he could not pay.

■ Summary judgment may be granted when the moving party shows not only that there is no genuine issue as to any material fact, but also that he is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Because fact issues remain regarding the method of determining indigence and the administrative procedure for charging an inmate for medical services, the granting of summary judgment is precluded.

■ The Court notes that Plaintiff has also asserted that because he is a state inmate housed in the Harris County Jail, the entire cost of his maintenance is paid by the state. Plaintiff presumably argues that the county is "double-charging" for medical services provided to him. This argument is without merit.

The evidence presented with the motion shows the State paid Harris County twenty dollars per day between April 1, 1991 and August 31, 1993 for each state inmate in excess of the first 1,362 state inmates housed in Harris County Jail. *See* TEX.GOV'T.CODE ANN. § 499.124(a) (Supp.1995). Between September 1, 1993 and August 31, 1995, the

State pays Harris County twenty dollars per day for each state inmate in excess of the first 681 state inmates housed in the Harris County Jail. *See* Tex.Gov't.Code Ann. § 499.124(b) (Supp.1995). Although the county is paid twenty dollars per day per prisoner in excess of a certain number, the estimated total cost to house an inmate in the Harris County Jail is $41.74 per day. *See* Affidavit of M.W. Quinn. The state cannot, therefore, be said to have already paid charges for medical services on Plaintiff's behalf. Accordingly, if the procedure for charging for medical services satisfies due process, Plaintiff can properly be charged for medical services received while he was housed in the county jail.

Because there are genuine fact issues regarding whether the procedure for charging for medical services satisfies due process, summary judgment is inappropriate on that issue. However, as set forth above, Plaintiff has failed to establish an equal protection violation and therefore cannot succeed on an equal protection claim under § 1983. Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's equal protection claim. It is therefore

ORDERED that Defendant's motion for summary judgment (Docket Entry # 13) is GRANTED in part and DENIED in part. Plaintiff may proceed on his Fourteenth Amendment due process claim.