971 P.2d 214

**Felix DUARTE and Raymond Sidoma, Plaintiffs/Appellants,**

**v.**

**STATE of Arizona ex rel. Samuel LEWIS, Director, Arizona Department of Corrections, Defendant/Appellee.**

**No. 2 CA–CV 98–0034.**

Court of Appeals of Arizona, Division 2, Department A.

Nov. 25, 1998.

Jack L. Lansdale, Tucson, for Plaintiffs/Appellants.

Grant Woods, Attorney General By Thomas J. Dennis and Paul E. Carter, Phoenix, for Defendant/Appellee.

FLÓREZ, Judge.

¶ 1 Appellants Raymond Sidoma and Felix Duarte were assigned to a work detail at an Arizona state prison and were injured when they fell from a scaffolding that prison officials had directed them to climb as part of their work. They sued the state for their injuries, and a jury returned verdicts of $100,000 for Duarte and $10,000 for Sidoma, apportioning eighty-five percent of the fault to appellants and fifteen percent to the state. The trial court entered a judgment finding "that the Defendant State of Arizona is entitled to a setoff against each Plaintiff pursuant to A.R.S. § 31–238, in a sum equal to eighty percent of the amount due under the verdict." After reducing the verdicts by the amount of comparative fault the jury had apportioned, the court further reduced appellants' damages by the amount of the setoffs to which the state was entitled under the statute. After making these calculations, the court entered a judgment of $3,000 for Duarte and $300 for Sidoma.

¶ 2 Appellants appeal only from that part of the court's calculations applying § 31–238 and setting off the state's costs of their incarceration against the amounts they had been awarded from the state. Appellants challenge the statute on two constitutional grounds. They do not challenge the trial court's method of calculating the setoff amounts for both past and future incarceration. We affirm.

**Equal Protection**

¶ 3 Appellants first argue that § 31–238 denies them equal protection of the law. The statute requires the director of the department of corrections to establish a per annum cost of incarcerating criminals and grants the state

the right to set off the cost of incarceration calculated under subsection A at any time and without prior notice against any claim made by or monetary obligation owed to a person for whom a cost of incarceration can be calculated, except that twenty per

cent of any claim or monetary obligation shall be exempt from the provisions of this section.

§ 31–238(D). We assume that appellants' challenge to the statute is based on the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution although they have nowhere cited this provision in their brief.

¶ 4 "When reviewing the constitutionality of a statute, we must presume it is constitutional. [A party challenging the constitutionality of a statute] must prove beyond a reasonable doubt that [it] is unconstitutional." *Samaritan Health Sys. v. Superior Court*, 278 Ariz. Adv. Rep. 27, ¶ 21, —— Ariz. ——, —— P.2d ——, 1998 WL 652190 (Ct. App. September 24, 1998) (citations omitted); see also *United States v. Doyan*, 909 F.2d 412 (10th Cir.1990). We review de novo constitutional challenges because they involve questions of law. *Little v. All Phoenix S. Community Mental Health Ctr.*, 186 Ariz. 97, 919 P.2d 1368 (App.1996).

¶ 5 Fourteenth Amendment equal protection analysis applies one of three tests—the rational relationship test, the strict scrutiny test, and the intermediate or "means scrutiny" test. See, e.g., *Kenyon v. Hammer*, 142 Ariz. 69, 688 P.2d 961 (1984); *Lerma v. Keck*, 186 Ariz. 228, 921 P.2d 28 (App.1996); see also 3 Ronald D. Rotunda and John E. Nowak, Treatise on Constitutional Law § 18.3, n. 5 (2d ed.1992). The parties agree that, because the statute does not apply to any suspect classification and because it burdens no fundamental right, the rational basis or rational relationship test applies. *Doyan*; see also *Beck v. Symington*, 972 F.Supp. 532 (D.Ariz.1997) (equal protection challenge to statute requiring inmates to pay court filing fees subject to rational basis analysis); *Gardner v. Wilson*, 959 F.Supp. 1224 (C.D.Cal.1997) (equal protection challenge to statute authorizing inmate to be charged copay fee for medical services reviewed under rational basis test); *DelVerne v. Klevenhagen*, 888 F.Supp. 64 (S.D.Tex.1995) (challenge to statute authorizing prisoners to be charged for medical services reviewed under rational relationship

test), rev'd on other grounds, *Myers v. Klevenhagen,* 97 F.3d 91 (5th Cir.1996); *Burns v. State,* 303 Ark. 64, 793 S.W.2d 779 (Ark. 1990) (equal protection challenge to statute authorizing county jails to charge prisoners for medical services subject to rational basis review).

¶ 6  Under the rational basis test, legislation must serve some legitimate state interest and the legislative scheme must rationally further that interest. *Kenyon; Lerma.* We agree with the state that § 31–238(D) rationally serves the legitimate state interest of reducing the state's costs of incarceration and thereby reinforcing inmates' social accountability and fiscal responsibility for their crimes. A substantial number of federal courts also agree that legislation allowing the government to recover the costs of an inmate's incarceration serves legitimate government interests. *United States v. Breeding,* 109 F.3d 308 (6th Cir.1997); *United States v. May,* 52 F.3d 885 (10th Cir.1995); *United States v. Leonard,* 37 F.3d 32 (2d Cir.1994); *United States v. Turner,* 998 F.2d 534 (7th Cir.1993); *United States v. Hagmann,* 950 F.2d 175 (5th Cir.1991); *Doyan;* see *United States v. Zakhor,* 58 F.3d 464 (9th Cir.1995) (costs of supervised release); see generally S.P. Conboy, Prison Reimbursement Statutes: The Trend Toward Requiring Inmates to Pay Their Own Way, 44 Drake L.Rev. 325 (1996); but see *United States v. Spiropoulos,* 976 F.2d 155 (3d Cir.1992). Setting off mutual claims instead of collecting the costs of incarceration through additional burdensome court actions not only expedites the manner in which the state meets its responsibility to pay judgments against it but also provides an efficient means to obtain reimbursement for the costs of incarceration, which equitably and reasonably should have priority in repayment. Cf. *DelVerne* (statute authorized county to bring independent civil action against inmate to recover cost of medical services).

¶ 7  *Doyan* is particularly instructive. There, the court upheld a district court's application of a federal sentencing guideline authorizing an additional fine to pay the costs of criminals' incarceration, applying the rational basis test and determining that the imposition of a fine to reimburse the government for the costs of incarceration did not violate the prisoner's equal protection rights. "Clearly, the federal government, 'has a fundamental interest in appropriately punishing persons—rich and poor—who violate its criminal laws.' " 909 F.2d at 416, quoting *Bearden v. Georgia,* 461 U.S. 660, 669, 103 S.Ct. 2064, 2071, 76 L.Ed.2d 221, 231 (1983). The court explained that reimbursing the government through a fine served the legitimate government interest of sparing the taxpayers the expenses of incarceration. This legitimate government interest is served as much by a setoff as by imposing a fine.

¶ 8  We note, moreover, that other states' statutes requiring inmates to reimburse the state for the costs of incarceration have also withstood equal protection challenges. *DelVerne; Burns; State Treasurer v. Wilson,* 423 Mich. 138, 377 N.W.2d 703 (1985).

¶ 9  Appellants argue, however, that the statute does not serve the state's legitimate interest in defraying the costs of incarceration because the setoff applies only to successful inmates who recover personal injury judgments against the state. We disagree. That the legislative scheme employs a setoff instead of another collection mechanism does not render the statute unconstitutional. Appellants do not cite, nor have we found, any authority that requires the state to use any specific method or all methods of serving a legitimate state interest before it can choose one of several rational methods. In rejecting a similar argument in another equal protection challenge to a statute abrogating the collateral source rule in medical malpractice cases, our supreme court said, "The legislature is entitled to proceed 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.' " *Eastin v. Broomfield,* 116 Ariz. 576, 585, 570 P.2d 744, 753 (1977), quoting *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563, 573 (1955).

¶ 10  Appellants further argue that the statute is not rational because the legislature has not provided other means of recovering incarceration costs. They are incorrect. The legislature has provided other means of

recovering the costs of incarceration, for example, by authorizing the deduction of utility fees from prisoners' accounts, A.R.S. § 31–239, and by requiring that earnings of prisoners on work furlough be used to pay their personal expenses. A.R.S. § 31–334; see *Hogan v. Arizona Bd. of Pardons & Paroles*, 108 Ariz. 472, 501 P.2d 944 (1972) (board had authority to confiscate payroll checks of prisoner on work furlough living in halfway house).

■ ¶ 11 Appellants' equal protection challenge also questions the rational basis for the statute when the setoff is limited to eighty percent of the state's obligation to the inmate. They ask, "If the state's interest is in recouping costs of incarceration, why is 100 percent of the judgment not set off?" The rationality of the statute is supported by the state's response that twenty percent is a reasonable amount to exempt from setoff so inmates can pay their attorneys and the costs of litigation. The legislature's chosen method to serve the state's legitimate interests by pursuing only eighty percent of a judgment instead of one hundred percent does not make the choice irrational and violative of equal protection.

¶ 12 Appellants argue that the purported governmental interests the state offers do not provide a rational basis for the statute because no evidence was presented to the trial court that the legislative scheme, in fact, furthers any of those interests. This argument misperceives the nature of constitutional analysis, which begins with the presumption that the statute is constitutional. *Doyan; Samaritan Health Sys.* In examining statutes challenged on equal protection grounds and applying the rational basis test,

> [w]e must presume that the legislation is rational, and such presumption can be overcome only by "a clear showing of arbitrariness or irrationality." In determining whether the legislation rationally furthers a legitimate purpose, we may consider either the legislature's actual purpose or any hypothetical basis upon which it could have acted.

■ *Lerma*, 186 Ariz. at 233, 921 P.2d at 33, quoting *Church v. Rawson Drug & Sundry Co.*, 173 Ariz. 342, 350, 842 P.2d 1355, 1363 (App.1992). Thus, appellants had the burden of presenting evidence to overcome the presumption. Absent evidence to the contrary, the trial court properly applied the presumption by considering the state's interests that are rationally served by the statute. The presumption also allows this court, in undertaking a de novo review of the constitutionality of the statute, *Little*, to consider any actual purposes the state advanced below or any additional, hypothetical, rational bases for the statutory scheme. *Lerma; Church.* We conclude § 31–238 does not violate the equal protection afforded by the United States Constitution.

### Anti-abrogation Provisions

■ ¶ 13 Appellants next contend that § 31–238 violates article II, § 31, and article XVIII, § 6, of the Arizona Constitution. These anti-abrogation provisions state: "No law shall be enacted in this State limiting the amount of damages to be recovered for causing the death or injury of any person," Ariz. Const. art. II, § 31, and: "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." Ariz. Const. art. XVIII, § 6.

■ ¶ 14 We first observe that the statute preserves twenty percent of an inmate's recovery and does not abolish an inmate's right of redress. See *Ruth v. Industrial Comm'n*, 107 Ariz. 572, 490 P.2d 828 (1971) (statute granting worker right to elect to pursue action against third-party tortfeasor and granting Industrial Commission lien on any recovery not complete abrogation in violation of constitution). The anti-abrogation provision of the Arizona Constitution "has never been considered a guarantee of a particular amount of recovery.... [O]ur constitution permits regulations effectively reducing a plaintiff's recovery." *Jimenez v. Sears, Roebuck and Co.*, 183 Ariz. 399, 407, 904 P.2d 861, 869 (1995). Consequently, a statutory scheme that reduces the amount of damages recovered but preserves the fundamental right to bring an action without completely eliminating that right or limiting the recov-

ery does not violate the constitutional provisions.

¶ 15 Nor do the constitutional provisions guarantee that a damage recovery will be fully collectible. *Ruth; Church.* Thus, for example, Arizona's comparative fault statute, which apportions fault and may reduce a plaintiff's net recovery of damages, has been found not to violate the anti-abrogation provisions. *Jimenez; Larsen v. Nissan Motor Corp.*, 281 Ariz. Adv. Rep. 24, — Ariz. ——, 978 P.2d 119, 1998 WL 761667 (Ct.App. November 2, 1998).

¶ 16 Similarly, the anti-abrogation provisions are not violated by other statutory schemes that permit the government to recoup or reduce amounts it pays on behalf of a person who has been awarded damages. For example, a statute creating a lien in favor of the Industrial Commission against an injured worker's recovery from a third-party tortfeasor for the amount of workers' compensation benefits paid does not violate the constitutional provisions. *Ruth;* see also *Dietz v. General Elec. Co.*, 169 Ariz. 505, 821 P.2d 166 (1991) (defendants may constitutionally name immune employer as non-party at fault in negligence action even though apportionment of fault may effectively reduce plaintiff's recovery from other defendants). Similarly, the statutes creating a fund to pay claims against insolvent insurers have been held not to violate the anti-abrogation provisions even though the claims must be reduced by amounts received under other insurance policies. *Arizona Property & Cas. Ins. Guar. Fund v. Ueki*, 150 Ariz. 451, 724 P.2d 70 (App.1986). These are but two examples of statutory schemes that regulate damage recoveries without completely abrogating the fundamental right of redress or limiting a recovery and without violating Arizona's constitutional provisions.

¶ 17 Appellants argue that the statute violates the anti-abrogation provisions of the constitution because it operates as a "de facto immunity" statute. Contrary to appellants' assertion, the statute does not fully immunize the state from liability because twenty percent of the recovery remains exempt from setoff. We can also conceive of other cases in which inmates could recover substantially more than the cost of their incarceration calculated by the director of the department of corrections, and even after setoff, the state would remain liable for a substantial sum. Because the statute limits the amount the state is entitled to set off, it does not operate as a de facto immunity statute or violate the constitution's anti-abrogation provisions.

¶ 18 "We differentiate between abrogation and regulation by determining whether a purported legislative regulation leaves those claiming injury a reasonable possibility of obtaining legal redress." *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 9, 18, 730 P.2d 186, 195 (1986). A statute does not violate the anti-abrogation provisions if it does "not affect the essence of the fundamental right to bring a lawsuit ... [but] merely regulate[s] what is done with the action after it is brought...." *Kenyon*, 142 Ariz. at 83, 688 P.2d at 975. The setoff provision does not violate the anti-abrogation provisions because it preserves the reasonable possibility of obtaining redress without eliminating the fundamental right of recovery. It affects the action only after it is brought by creating a reciprocal remedy in favor of the state to recover a lawful obligation owed to it that ultimately may reduce the damages actually recovered. Therefore, the statute as applied in this case is constitutional, and the trial court correctly set off the state's costs of incarceration against appellants' recoveries.

¶ 19 The trial court's judgment is affirmed.

DRUKE, C.J., and PELANDER, P.J., concur.