No. 82,962

FAMILIES AGAINST CORPORATE TAKEOVER, *Appellant,* v. GARY MITCHELL and THE KANSAS DEPARTMENT OF HEALTH & ENVIRONMENT, *Appellees.*

(1 P.3d 884)

Opinion filed March 10, 2000.

*John M. Carter II,* of Topeka, argued the cause, and *Robert V. Eye,* of Topeka, was with him on the briefs for appellant.

*Erika V. Bessey,* special assistant attorney general, of Kansas Department of Health and Environment, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This case raises the jurisdictional issue of standing. Petitioner, Families Against Corporate Takeover (FACT), appeals from a district court dismissal of a petition for judicial review of administrative agency action. FACT sought review of a Kansas Department of Health and Environment (KDHE) permit authorizing construction of a 14,300-head hog farm in Hodgeman County. The district court sustained a K.S.A. 60-212(b)(6) motion filed by KDHE and dismissed the case, finding that FACT had no standing to sue. FACT appeals.

Our jurisdiction is under K.S.A. 20-3018(c) (a transfer from the Court of Appeals on our own motion).

The single issue is whether FACT has standing to seek judicial review of the KDHE's decision.

Our answer is, "Yes."

## FACTS

FACT is a nonprofit corporation founded in Hodgeman County by various citizens concerned about the environmental, economic, and social impacts of large-scale hog farms. Murphy Farms, Inc., (Murphy) sought a permit for its hog farm from KDHE. KDHE issued a permit to Murphy under the National Pollution Discharge Elimination System (NPDES). The NPDES is a delegated federal permitting program under the Clean Water Act, 33 U.S.C. § 1251 *et seq.* (1994). See 33 U.S.C. § 1342(b) (1994) (NPDES state permitting program). See generally Niehaus, *Clean Water Act Permitting: The NPDES Program at Fifteen,* 2 Nat. Resources & Env't 16 (Winter 1987) (explaining the NPDES permitting process and relevant terminology). The NPDES program allows states to develop and administer permitting programs and issue NPDES permits if the state program is sufficient to meet federal Clean Water Act standards. KDHE issued the permit in question by virtue of the NPDES permitting authority found at 33 U.S.C. § 1342(b).

FACT formally requested that KDHE revoke Murphy's permit to operate the hog farm. KDHE did not respond. By operation of law, KDHE's failure to respond within 60 days constituted a denial of FACT's request to revoke the permit. See K.A.R. 28-16-62(g)(2). FACT then filed a petition in Shawnee District Court seeking judicial review of KDHE's decision.

FACT provided three affidavits from members of the organization. These affiants alleged an imminent decrease in the value of their property, some of which was adjacent to the proposed hog farm. The alleged decrease in value would be caused by odor, flies, vermin, pestilence, and possible contamination of surface and ground water. One affiant also claimed harmful health consequences to his asthmatic wife and son because of KDHE's decision to allow the hog farm.

KDHE challenged FACT's standing to sue by filing a K.S.A. 60-212(b)(6) motion to dismiss (failure to state a claim upon which relief can be granted). The district court granted the motion, holding that FACT had no standing. The district court, relying on *Weinlood v. Simmons*, 262 Kan. 259, 936 P.2d 238 (1997), reasoned that FACT had not alleged sufficient individual and particularized injury to maintain standing.

Before addressing the standing issue we must dispose of a KDHE motion filed shortly before oral argument. KDHE moved to dismiss the appeal as moot. The motion asserted in part:

"2.  The facility in issue has not been built and no construction is underway. . . .

"3.  K.S.A. 1998 Supp. 17-5908 states that a proposition to allow swine production facilities as defined in K.S.A. 17-5903 may be submitted to qualified voters of a county for a vote upon whether to establish swine production facilities. K.S.A. 17-5903(s) defines a swine production facility as land, structures and related equipment owned or leased by a corporation for housing, breeding, farrowing or feeding of swine.

"4.  The citizens of Hodgeman County, Kansas voted against allowing swine facilities in Hodgeman County by a vote of 551 to 529 as shown in the Abstract of Votes Case at a Special Election in Hodgeman County, Kansas, on the 1st day of April 1997 . . . .

"5.  Murphy Family Farms is a family farming corporation and not subject to the prohibition on corporately owned swine facilities in Hodgeman County.

"6. On November 15, 1999, Smithfield Foods, Inc. signed a definitive acquisition agreement to acquire all of the capital stock of Murphy Farms, Inc. and its affiliated companies including Murphy Family Farms which is the holder of the permit in issue. . . .

"7.  As a result of the above described transaction, the status of the permit holder will prohibit it from siting the proposed facility in Hodgeman County pursuant to local law."

The validity of the Hodgeman County vote on corporate hog production facilities was affirmed in *Cure v. Board of Hodgeman County Comm'rs*, 263 Kan. 779, 952 P.2d 920 (1998).

FACT contends the issue before us is not moot. We agree with FACT. The proposed merger contemplated between Murphy and Smithfield Foods, Inc., is beyond our record here. The focus of FACT's case is KDHE's action in issuing the permit. As long as the permit remains valid, FACT seeks to pursue its action against

KDHE. What the future may hold for the acquisition of Murphy remains speculative. The case is not moot.

## DISCUSSION

We now turn to FACT's standing. Standing is a jurisdictional issue. See *Moorhouse v. City of Wichita*, 259 Kan. 570, 574, 913 P.2d 172 (1996). Whether a district court has jurisdiction is a question of law over which we exercise unlimited review. *In re Marriage of Killman*, 264 Kan. 33, 34, 955 P.2d 1288 (1998).

The question is whether FACT has standing to challenge KDHE's actions. FACT and KDHE spend much time in their briefs discussing *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 53 L. Ed. 2d 383, 97 S. Ct. 2434 (1977). *Hunt* sets forth a three-prong standing test for unincorporated associations. 432 U.S. at 343. FACT urges us to adopt the *Hunt* test for associational standing. We recently did so in *NEA-Coffeyville v. U.S.D. No. 445*, 268 Kan. 384, 996 P.2d 821 (filed January 28, 2000, after oral argument in this case).

The district court did not have the benefit of our standing holding in *NEA-Coffeyville*. The parties' submissions to the district court channeled the district judge into a standing analysis based on *Weinlood*, 262 Kan. 259. *Weinlood* was a 42 U.S.C. § 1983 (1994) action filed by prison inmates challenging the assessment of a $1 monthly service fee for administrating each inmate's trust account. The inmates did not take issue with the amount of the fee; they argued it could not be paid to the Crime Victims Compensation Fund. We said:

"The problem with this contention in the context of this litigation is that if the fees collected are being improperly sent to the crime victims compensation fund rather than being used to defray the costs of operation of the prison, the injured parties are the taxpayers of Kansas." 262 Kan. at 266.

We then reasoned: "Generally, an injunction will not lie at the suit of a private person to protect the public interests. [Citations omitted.] A plaintiff must have a special private interest distinct from that of the public at large in order to bring an actionable claim." 262 Kan. at 267. The context of *Weinlood* is far afield from the strong public policy of citizen participation in NPDES permitting.

The participation policy has been mandated by Congress, the Environmental Protection Agency (EPA), and the KDHE regulations.

We surmise that the district court's analysis of FACT's standing may have differed had *NEA-Coffeyville* been available. The NEA-Coffeyville teachers were members of an unincorporated association. We acknowledge FACT is a corporation. The organization seeking standing in *Hunt* was a state agency established to promote and protect the state's apple industry. Here, FACT members have formed a nonprofit corporation rather than an unincorporated association. We see no reason to turn a standing issue on whether the members have gathered in the form of a nonprofit corporation rather than an unincorporated association. See *Colorado Pyrotechnic Ass'n v. Meyer*, 740 F. Supp. 792, 795 (Colo. 1990).

Our analysis does not end with the reference to *NEA-Coffeyville*, however. FACT did not file a traditional civil lawsuit. FACT filed a petition for judicial review under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.* The KJRA defines standing for judicial review of an agency action. Therefore, whether FACT meets the three-part test for standing in *NEA-Coffeyville* becomes relevant only if FACT meets the standing requirements of the KJRA. Standing under the KJRA is controlled by K.S.A. 77-611, which provides:

"The following persons shall have standing to obtain judicial review of final or nonfinal agency action:

(a) A person to whom the agency action is specifically directed;

(b) a person who was a party to the agency proceedings that led to the agency action;

(c) if the challenged agency action is a rule and regulation, a person subject to that rule; or

(d) a person eligible for standing under another provision of law."

FACT asserted standing in the district court under subsection (d)'s "another provision of law" clause, citing 40 C.F.R. Part 123 (1999). Effective June 7, 1996, 40 C.F.R. § 123.30 directed states administering the NPDES program to provide citizens an opportunity for judicial review of approval or denial of NPDES permits. 61 Fed. Reg. 20,972 (1996). The Clean Water Act itself provides for citizen suits in federal court at 33 U.S.C. § 1365 (1994). States

that administer the NPDES program are required by federal regulations to provide for judicial review through citizen suits at the state level. 40 C.F.R. § 123.30.

The problem with FACT's reliance on 40 C.F.R. § 123.30 as "another provision of law" is that § 123.30 directs states to adopt a standing rule and does not provide an independent basis for standing. The EPA promulgated this rule after it became aware of "instances in which citizens [were] barred from challenging State-issued permits because of restrictive standing requirements in State law." 61 Fed. Reg. 20,972 (1996). See *e.g., EDF v. State Water Control Board,* 12 Va. App. 456, 404 S.E. 2d 728 (1991) (holding under Virginia law only a permittee has standing to challenge issuance or denial of permit).

As KDHE observes, Kansas has not adopted 40 C.F.R. § 123.30 as the law of this state. It is interesting that KDHE makes this argument. By admitting that there has been no compliance with 40 C.F.R. § 123.30, KDHE admits that its authority to grant NPDES permits is in jeopardy and may be revoked by the EPA. KDHE says in its brief: "If a state fails to meet the standard, the remedy is a petition to the United States Environmental Protection Agency for review and possible withdrawal of program authorization by the federal regulatory agency [the EPA] in accordance with the Clean Water Act." KDHE is correct. Under 33 U.S.C. § 1342(c)(3), the Administrator of the EPA must decide, after a public hearing, that a state is not administering the NPDES program according to federal requirements before revoking a state's authority to administer the program. Thus, FACT could file a complaint with the EPA seeking to revoke the KDHE's authority to grant NPDES permits. However, even if that authority is revoked by the EPA, it is not clear that the permit at issue here would be affected. Nothing in § 1342(c) provides grounds for challenging permits issued while the state agency was out of compliance.

We are puzzled by what appears to be the State's truncated approach to NPDES administration. KDHE administers the federal program and issues the hog farm permit under the federal program; but according to KDHE, the legislature has not adopted the part of the federal program that opens Kansas courts for Kan-

sans to question the permit by judicial review. KDHE is contesting what the EPA clearly says should be allowed: citizen suits to challenge NPDES permits.

FACT makes two alternative arguments on appeal. First, FACT asserts that if state law does not provide for standing (because Kansas failed to adopt a standing rule as directed by § 123.30), state authority to administer the NPDES program is preempted by federal law. However, even if FACT has standing under 33 U.S.C. § 1365 in a preemption analysis, that standing would be in federal, not state, court.

Second, FACT asserts standing under K.S.A. 77-611(b) as a "person who was a party to the agency proceedings that led to the agency action." FACT argues in the alternative at this stage because KDHE's admission that Kansas has not adopted a § 123.30 standing rule came in its brief to this court. Although not advanced in the district court, we conclude the "K.S.A. 77-611(b)" argument is before us on appeal.

Under K.S.A. 1999 Supp. 60-208, pleadings are to be given a liberal construction. We note that at the time the K.S.A. 60-212(b)(6) motion to dismiss was granted there had been no discovery. The record suggests that no factual matters outside the pleadings were presented to or considered by the district court. We have previously set out the scope of review for a motion to dismiss. See *Bruggeman v. Schimke*, 239 Kan. 245, 247-48, 718 P.2d 635 (1986). The concept of notice pleading relies on its companion, discovery, to fill in the gaps. See 1 Gard and Casad, Kansas C. Civ. Proc. 3d Annot. § 60-208 (1997). We have held that it is not necessary to plead a statute under which relief may be granted if the facts bring the case within the statute. *Oller v. Kincheloe's, Inc.*, 235 Kan. 440, 448, 681 P.2d 630 (1984). Our discussion of notice pleading in *Oller* applies here. 235 Kan. at 446-49. Dismissal of a petition on a K.S.A. 60-212(b)(6) motion before utilization of discovery is seldom warranted. *Noel v. Pizza Hut, Inc.*, 15 Kan. App. 2d 225, 233, 805 P.2d 1244 (1991), *rev. denied* 248 Kan. 996 (1991). Following the teaching of *Bruggeman* we have a duty to determine if the pleaded facts and inferences state a claim on any possible theory. See *Noel*, 15 Kan. App. 2d at 231.

Consideration of FACT's K.S.A. 77-611(b) assertion that it was a party to the KDHE proceedings is endorsed by an exception to our general rule on issues raised for the first time on appeal. FACT's assertion involves only a question of law arising from facts we deem admitted in reviewing a K.S.A. 60-212(b)(6) motion. See *Johnson v. Kansas Neurological Institute,* 240 Kan. 123, 126, 727 P.2d 912 (1986).

FACT argues that it fully participated in the permitting process as allowed by K.A.R. 28-16-61. K.A.R. 28-16-61(b) requires KDHE to provide for a public notice and comment period during the NPDES permitting process. During the public comment period, any interested person may submit written comments on a draft permit and may request a public hearing. K.A.R. 28-16-61(c). "All comments shall be considered in making the final decision and shall be answered as provided in subsection (e) of this regulation." K.A.R. 28-16-61(c). Clearly KDHE must allow citizens to comment on its proposed permits, and it also must respond to their comments.

At the request of FACT and others, a public meeting was held in Hodgeman County. At that meeting, members of FACT and two consultants hired by FACT submitted comments on the pending permit for Murphy's hog farm. The record does not disclose whether KDHE formally responded to FACT's comments.

FACT participated in the agency proceedings (permit review and public comment) that led to the agency action (granting the permit). During oral argument before us, KDHE's counsel said: "[T]hose citizens did both as a group and individually have the opportunity to participate in the permitting process through the public hearing process, through the opportunity to submit comments on the permit." We hold that FACT is entitled to assert standing as a "person who was a party to the agency proceedings that led to the agency action" under K.S.A. 77-611(b).

In *NEA-Coffeyville,* 268 Kan. 384, Syl. ¶ 2, we said:

"An association has standing to sue on behalf of its members when (1) the members have standing to sue individually; (2) the interests the association seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires participation of individual members."

Under *NEA-Coffeyville* and *Hunt,* FACT has standing to seek judicial review of the KDHE's action. First, the individual members of FACT have shown sufficient imminent injury to sue individually. Second, there is no doubt that the interests FACT seeks to protect are germane to its purpose. FACT was organized for the express purpose of protecting its members from the adverse effects of a large-scale hog farm. Last, neither the claim asserted nor the relief requested requires the participation of individual FACT members. FACT seeks judicial review of agency action. The relief sought is revocation of the NPDES permit. Assuming FACT's initial contentions survive the discovery process, the district court's analysis will be whether KDHE complied with the various rules and regulations involved in granting an NPDES permit. This analysis does not require participation of individual FACT members.

The KDHE administrative regulations support FACT's standing as a "party." K.A.R. 28-16-62(g) specifically governs the *procedures* for modifying, revoking, reissuing, and terminating NPDES permits. *Any interested person* may request that a permit be modified, revoked, reissued, or terminated. K.A.R. 28-16-62(g)(1) (as FACT did here). Denials of such requests are not subject to public notice, comment, or hearings. However, the regulations state that this informal process is "a prerequisite to seeking judicial review of agency action" in denying the request. K.A.R. 28-16-62(g)(2). This is a clear indication that citizens are allowed to both comment on proposed NPDES permits *and* seek judicial review of permit granting.

Reversed and remanded.