(18 P.3d 270)
No. 84,172

THOMAS BRITT NICHOLS, *Appellant,* v. KANSAS GOVERNMENTAL ETHICS COMMISSION, a Government Agency, *Appellee.*

Opinion filed January 26, 2001.

*Thomas Britt Nichols,* appellant pro se.

*Vera May Gannaway,* general counsel, Kansas Governmental Ethics Commission, for the appellee.

Before BEIER, P.J., PIERRON, J., and TOM MALONE, District Judge, assigned.

PIERRON, J.: Thomas Britt Nichols appeals the district court's dismissal of his action against the Kansas Governmental Ethics Commission (Commission). Nichols argues the district court erred in finding he did not have standing to seek review of the Commission's decision, that the Commission's decision as affirmed by the district court impermissibly infringed on his constitutional rights of speech, equal protection, and association and that the district court erred in sealing the record on appeal.

The facts in this case are for the most part set forth in the Kansas Supreme Court's recent decision of *Nichols v. Kansas Political Action Committee*, 270 Kan. 37, 11 P.3d 1134 (2000). In that case, Nichols sued individuals, unincorporated associations, and a corporation, alleging the defendants acted in concert to harm him by illegally contributing to the campaign of his opponent in the 1996 election for the Kansas House of Representatives seat for the 22nd District. Nichols alleged multiple violations of the Kansas Campaign Finance Act (CFA), K.S.A. 25-4142 *et seq.* The court rejected his claim, finding, "The Kansas Campaign Finance Act, K.S.A. 25-4142 *et seq.*, does not create a private cause of action in favor of one aggrieved or damaged by a violation of the Act. The remedy for a violation is an administrative one." 270 Kan. 370, Syl. ¶ 1.

With regard to the case at bar, in 1998, Nichols submitted numerous complaints to the Commission against the same individuals he had sued in district court. In accordance with the CFA, the Commission reviewed the complaints in executive session on November 19, 1998, and found the complaints were sufficient enough to warrant an investigation of Nichols' allegations of CFA violations. After an investigation, the Commission met in executive session on December 17, 1998, and January 21, 1999, to determine whether there was probable cause to believe the respondents had violated provisions of the CFA. The Commission dismissed the complaints against all the respondents, stating in respective dismissal orders that "the Commission found there is insufficient evidence to believe the respondent did intentionally violate K.S.A. 25-4153(a)(2), 25-4154(a), 25-4145(a) and 25-4146(c), as alleged in the complaint."

Pursuant to the Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*, Nichols filed a petition for judicial review of the agency action in Shawnee County District Court. The Commission filed a motion to dismiss, claiming Nichols lacked standing to file his claim. The district court agreed with the Commission and concluded that Nichols was not an "aggrieved party" pursuant to K.S.A. 25-4185 of the CFA, and therefore he lacked standing to seek judicial review of the Commission's

decision. In dicta, the district court also stated Nichols could not meet the constitutionally required minimum standards to invoke standing.

Nichols appeals the district court's dismissal of his case.

Nichols first argues the district court erred in finding he lacked standing to seek judicial review of the Commission's decision.

Standing is a jurisdictional issue. See *Moorhouse v. City of Wichita*, 259 Kan. 570, 574, 913 P.2d 172 (1996). Whether a district court has jurisdiction is a question of law over which we exercise unlimited review. *In re Marriage of Killman*, 264 Kan. 33, 34, 955 P.2d 1228 (1998).

Complaints concerning violations of the CFA are submitted to the Commission, which was previously known as the Kansas Commission on Governmental Standards and Conduct. K.S.A. 1999 Supp. 25-4119a(b). Through the CFA, the legislature has granted the Commission broad interpretive, investigative, adjudicative, and enforcement powers. See, *e.g.* K.S.A. 1999 Supp. 25-4158; K.S.A. 25-4160; K.S.A. 25-4161; K.S.A. 25-4178; K.S.A. 1999 Supp. 25-4180; K.S.A. 1999 Supp. 25-4181; K.S.A. 25-4182-K.S.A. 25-4184.

K.S.A. 25-4160 provides that any person may file "with the commission a verified complaint in writing stating the name of any person to whom or to which the campaign finance act applies who is alleged to have violated any provision of the campaign finance act, and which shall set forth the particulars thereof." After an individual files a complaint alleging violations of the CFA, the initial actions of the Commission are controlled by K.S.A. 25-4161, which provides as follows:

"(a) If a complaint is filed and the commission determines that such verified complaint does not allege facts, directly or upon information and belief, sufficient to constitute a violation of any provision of the campaign finance act, it shall dismiss the complaint and notify the complainant and respondent thereof.

"(b) Whenever a complaint is filed with the commission alleging a violation of a provision of the campaign finance act, such filing and the allegations therein shall be confidential and shall not be disclosed except as provided in the campaign finance act.

"(c) If a complaint is filed and the commission determines that such verified complaint does allege facts, directly or upon information and belief, sufficient to

constitute a violation of any of the provisions of the campaign finance act, the commission shall promptly investigate the alleged violation.

"(d) The commission shall notify the attorney general of any apparent violation of criminal law or other laws not administered by the commission, which is discovered during the course of any such investigation.

"(e) If after the investigation, the commission finds that probable cause does not exist for believing the allegations of the complaint, the commission shall dismiss the complaint. If after such investigation, the commission finds that probable cause exists for believing the allegations of the complaint, such complaint shall no longer be confidential and may be disclosed. Upon making any such finding, the commission shall fix a time for a hearing of the matter, which shall be not more than 30 days after such finding. In either event the commission shall notify the complainant and respondent of its determination.

"(f) The remedies and protections provided by K.S. 75-2973 and amendments thereto shall be available to any state employee against whom disciplinary action has been taken for filing a complaint pursuant to this act."

The first question for resolution on appeal concerns the situation in K.S.A. 25-4161(e) where the Commission determines probable cause does not exist for believing the allegations in the complaint and the complaint is dismissed. Does the individual who filed the complaint have any recourse from the Commission's order of dismissal?

Only a handful of cases have addressed the CFA and none are of much assistance to the question at hand. See *Kansans For Life, Inc. v. Gaede*, 38 F. Supp. 2d 928 (D. Kan. 1999); *Legislative Coordinating Council v. Stanley*, 264 Kan. 690, 957 P.2d 379 (1998); *State v. Palmer*, 248 Kan. 681, 810 P.2d 734 (1991); *State v. Kearns*, 229 Kan. 207, 623 P.2d 507 (1981); *Governmental Ethics Comm'n v. Cahill*, 225 Kan. 772, 594 P.2d 1103 (1979); *State v. Doyen*, 224 Kan. 482, 580 P.2d 1351 (1978); *Gietzen v. Feleciano*, 25 Kan. App. 2d 487, 964 P.2d 699 (1998).

The court in *Nichols* did not specifically address Nichols' standing to appeal an order from the Commission, only that he should seek administrative relief. However, the court's opinion could be read to imply that he has standing in the present case.

"The principal ground on which the district court dismissed Nichols' action was that all counts involved alleged violations of the CFA, which implies no private cause of action. There is no private right of action under the CFA, but there is a fully articulated administrative procedure for the Commission's receiving, inves-

tigating, deciding, and referring privately filed complaints. The CFA further provides that any person aggrieved by any order of the Commission 'may appeal such order in accordance with the provisions of the act for judicial review and civil enforcement of agency actions.' K.S.A. 25-4185." 270 Kan. at 54.

The district court below held the legislature's broad delegation of powers to the Commission provided strong evidence of the intent to grant the Commission exclusive authority over CFA controversies and that the district court can only become involved in limited circumstances. Specifically, a district court's involvement is limited to situations in which (1) the Commission has referred a violation of the CFA to the appropriate division of the attorney general's office and to the county or district attorney who then files a criminal action in district court, (2) the Commission requests some form of enforcement assistance, (3) the respondent brings an action for malicious prosecution, or (4) an aggrieved person appeals the Commission's order. K.S.A. 25-4162 - K.S.A. 25-4164; K.S.A. 25-4185.

Is Nichols an "aggrieved" person under the CFA? Black's Law Dictionary 65 (6th ed. 1990), defines "aggrieved" as "[h]aving suffered loss or injury; damnified; injured." Black's Law Dictionary 65 (6th ed. 1990), also defines "aggrieved party" as

"[o]ne whose legal right is invaded by an act complained of, or whose pecuniary interest is directly and adversely affected by a decree or judgment. One whose right of property may be established or divested. The word 'aggrieved' refers to a substantial grievance, a denial of some personal, pecuniary or property right, or the imposition upon a party of a burden or obligation."

The district court held Nichols was not an aggrieved party because the purpose of the CFA is to protect the public as a whole, and it does not confer standing to individual members of the public. See *State v. Palmer*, 248 Kan. at 699 (the purpose of the CFA is to "prevent unscrupulous persons and organizations from contributing unlimited sums of money in order to obtain improper influence over candidates for elective office or to affect the outcome of elections"). The district court found that Nichols, as a citizen, was a member of the public as a whole and violations of the CFA would affect the public generally and not him individually. The court cited *DPR, Inc. v. City of Pittsburg*, 24 Kan. App. 2d

703, 706-07, 953 P.2d 231, *rev. denied* 264 Kan. 821 (1998), where the court stated the "constitutionality of government action can only be challenged by a person directly affected and such challenge cannot be made by invoking rights of others."

The district court also rejected Nichols' claim that candidates and office holders have an additional separate and identifiable interest in the election process. The court also found that since Nichols was not a candidate or officeholder when he filed his complaints, his argument was meritless.

In line with the district court's decision, the Commission argues Nichols is not an aggrieved party under the CFA since he was not a candidate, nor had he been a candidate for 2 years, when he filed his complaints with the Commission. The Commission points out that Nichols was simply bringing the violations of the CFA to the attention of the Commission and was not seeking any cease and desist or restraining orders as allowed in K.S.A. 25-4182 or K.S.A. 25-4183 to prevent any ongoing violation. The Commission argues that Nichols could neither reap any personal benefit from any enforcement action taken by the Commission nor claim any personal, particularized injury by the Commission's failure to act.

The Commission also argues Nichols lacked sufficient personal interest in the resolution of his own complaints concerning his own legislative race to warrant standing as a real party in interest. The Commission cites *Doniphan County v. Miller*, 26 Kan. App. 2d 669, 670, 993 P.2d 648 (1999), where the court held that standing arises where "a party has sufficient interest in a justiciable controversy to obtain judicial resolution of the controversy." The Commission ties this definition of standing in with the recognized principle in Kansas that a "private person may not, in general, maintain an action to vindicate or enforce a mere public right in which his interest is no different than those of the public in general." *Watson v. City of Topeka*, 194 Kan. 585, 587, 400 P.2d 689 (1965) (citing *Dunn v. Morton County Comm'rs*, 162 Kan. 449, 177 P.2d 207 [1947]).

The Commission uses an analogy of its right and ability to enforce the public's interest in violations of the CFA as being similar to the ability of the courts and the district attorney's office to en-

force the criminal code. The Commission maintains that members of the public do not have standing to challenge an adverse decision of a prosecutor not to prosecute or an adverse decision of the court that there was a lack of probable cause to believe a defendant had committed a crime.

The first problem with the Commission's analogy is that under K.S.A. 22-2301(2), members of the general public can challenge an adverse decision by a prosecutor not to charge on a particular case. Additionally, the CFA clearly provides that "[a]ny person aggrieved by any order of the commission" can pursue an appeal pursuant to the KJRA. K.S.A. 25-4185.

The district court's claim that a district court has extremely limited involvement in the CFA does not conform to the Act's general appeal provision. We are not bound by the district court's interpretation of a statute. See *Smith v. Printup*, 262 Kan. 587, 604, 938 P.2d 1261 (1997). We do not believe the legislature provided for the Commission to have practically unreviewable interpretation, application, or discretionary enforcement of the CFA.

K.S.A. 25-4185 does not speak only to respondents who are punished for violating the CFA or only to orders entered after a full trial-type hearing before the Commission. Instead, K.S.A. 25-4185 allows "[a]ny person" who is aggrieved by "any order" of the Commission to appeal under the KJRA.

Nichols is an "aggrieved party" under the simplest use of that phrase. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should be. See *In Re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998). Nichols filed a complaint with the Commission alleging multiple violations of the CFA in his own legislative race as a candidate. He was listed as the complainant in each case. The Commission rejected his allegations and found they lacked probable cause. Under the Commission's interpretation of the CFA, the Commission's dismissal of any complaint, no matter how valid, for lack of probable cause would go unchallenged. We believe the legislature neither intended nor stated such a process.

Further, to deny Nichols standing on the basis that he was not a candidate at the time he filed his complaints, and had not been a candidate for 2 years, ignores the reality that most campaign contributions in violation of the CFA are probably not discovered until after an election. *Cf. Nixon v. Shrink Missouri Gov't PAC*, 528 U.S. 377, 145 L. Ed. 2d 886, 120 S. Ct. 897 (2000) (premising cause of action on fact that statutory limitations prevents PAC from giving larger contributions in the past).

A large portion of each party's appellate brief addresses the constitutional requirements for standing. As stated previously, the district court's decision on constitutional standing is dicta since the court found Nichols was not an aggrieved party pursuant to K.S.A. 25-4185. However, the Commission argues that even if we find Nichols is an aggrieved party under the CFA, he must still meet the constitutional minimum standards set forth in *United States v. Hays*, 515 U.S. 737, 742-43, 132 L. Ed. 2d 635, 115 S. Ct. 2431 (1995), to acquire standing. The Commission relies on *Families Against Corporate Takeover v. Mitchell*, 268 Kan. 803, 1 P.3d 884 (2000), to support its argument.

The Commission's cited authority does not support its premise that a person with standing *pursuant to statute* must still always meet the three-part constitutional test for standing under *Hays*. In *Families Against Corporate Takeover ("FACT")*, the Kansas Supreme Court reversed a district court's decision that FACT did not have standing to seek judicial review of the Kansas Department of Health and Environment's (KDHE) authorization of a permit for construction of a 14,300-head hog farm. 268 Kan. at 803-04. The court referenced the general standing provisions of the KJRA. Standing under the KJRA is controlled by K.S.A. 77-611, which provides:

"The following persons have standing to obtain judicial review of final or non-final agency action:

"(a) A person to whom the agency action is specifically directed;

"(b) a person who was a party to the agency proceedings that led to the agency action;

"(c) if the challenged agency action is a rule and regulation, a person subject to that rule; or

"(d) a person eligible for standing under another provision of law."

The court in *FACT* found that FACT had standing under K.S.A. 77-611(b) as a "person who was a party to the agency proceedings that led to the agency action." The court found FACT had fully participated in the agency proceedings through permit review and public comment that led to the agency's action of granting the hog farming permit. 268 Kan. at 810. The court also noted *NEA-Coffeyville v. U.S.D. No. 445*, 268 Kan. 384, 996 P.2d 821 (2000), as support for its holding. We find *FACT* analagous to the present case.

In its decision, the district court below rejected Nichols argument that the constitutional standing requirements in *Hays* do not apply when standing is expressly conferred by statute—in this case K.S.A. 25-4185. The court based its decision on *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992). In *Lujan*, a group of environmentalists filed suit against the Secretary of the Interior under the Endangered Species Act of 1973 (ESA) seeking a declaratory judgment that new regulations not extending protection of the ESA to foreign nations was in error and seeking an injunction requiring the Secretary to promulgate a new regulation restoring the initial interpretations of the ESA which provided such protection. Justice Scalia, writing for the majority, concluded that the environmentalists did not have standing under the ESA. 504 U.S. at 578.

The bulk of the *Lujan* opinion discusses whether the environmental groups had standing to sue under the ESA and whether the groups could meet the constitutional minimum standards to acquire standing of injury in fact, causal connection, and redressability. 504 U.S. at 560-61. The *Lujan* Court rejected the lower court's finding that the environmental groups had standing because they had suffered a "procedural injury." The citizen-suit provisions of the ESA provide, in pertinent part, that "any person may commence a civil suit on his own behalf (A) to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this chapter." 16 U.S.C. § 1540(g) (1994). The *Lujan* Court stated:

"We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." 504 U.S. at 573-74.

The *Lujan* Court extensively discussed the separation of powers in permitting the judiciary to only hear cases and controversies as provided in Article III of the Constitution. The Court held that Congress could not convert a public interest into a private interest through the citizen suit provisions of the ESA. "Vindicating the public interest (including the public interest in Government observance of the Constitution and laws) is the function of Congress and the Chief Executive," not the judiciary. 504 U.S. at 576.

In his concurring opinion, Justice Kennedy stated that in exercising its powers to define injuries and causation that will give rise to Article III cases or controversies, Congress

"must at the very least identify the injury it seeks to vindicate and relate the injury to the class of persons entitled to bring suit. The citizen-suit provision of the Endangered Species Act does not meet these minimal requirements, because while the statute purports to confer a right on 'any person . . . to enjoin . . . the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this chapter,' it does not of its own force establish that there is an injury in 'any person' by virtue of any 'violation.' 16 U.S.C. § 1540(g)(1)(A)." 504 U.S. at 580 (Kennedy, J., concurring).

In its plurality decision, the *Lujan* Court held that the environmental groups still must satisfy the three-part constitutional standing test despite the citizen suit provisions of the ESA.

In the present case, the district court held the same is true for Nichols under the CFA. However, there are differences that set *Lujan* apart from the case at bar. Here, we are dealing with an appeal from an administrative decision, whereas in *Lujan* the court considered an initial action filed in district court. Second, we are dealing with the district court's jurisdiction as provided by law in Article 3 of the Kansas Constitution, and not the cases and controversies requirement in Article III of the United States Constitution. Article 3, § 6(b) of the Kansas Constitution provides: "The district courts shall have such jurisdiction in their respective districts as

may be provided by law." Finally, under our statute, anyone can file a complaint with the Commission. In *Lujan*, only parties meeting the cases and controversies requirement could file a cause of action in district court.

Because we find that Nichols is an aggrieved person under K.S.A. 25-4185, he is entitled to an appeal under the KJRA. Administrative appeals pursuant to the KJRA are controlled by K.S.A. 77-621(c):

"The court shall grant relief only if it determines any one or more of the following:

"(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

"(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

"(3) the agency has not decided an issue requiring resolution;

"(4) the agency has erroneously interpreted or applied the law;

"(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

"(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious."

A review of the Commission's decision in Nichols' situation under K.S.A. 77-621(c)(4) and (7) could certainly be made by the district court or this court on appeal with the proper record. Such a review appears to be required under the applicable statutes.

Nichols also contests certain aspects of the confidentiality provisions of the CFA. See K.S.A. 25-4161. These provisions were enacted to promote the fair investigation and enforcement of the CFA. These provisions are used to prevent public disclosure of the record during litigation. With necessary confidentiality protections in place, the Commission could turn over to the reviewing court the results of its investigation and the standards by which it judged the probable cause of Nichols' complaint to permit a review under the KJRA. Further disclosure would not be necessary or appropriate under these facts.

Nichols also argues that if he cannot appeal the Commission's order of dismissal, the CFA impermissibly infringes upon his equal protection, speech, and association rights as protected by the Kansas Constitution and the First Amendment to the United States Constitution.

The Commission objects to review of this issue based on Nichols failure to raise the alleged underlying constitutional violations in the district court. The Commission appears to be correct.

In any event, as stated recently in *Nichols*, the campaign contribution limitations of the CFA are constitutional. 270 Kan. at 42-43. See also *Buckley v. Valeo*, 424 U.S. 1, 20-21, 46 L. Ed. 2d 659, 96 S. Ct. 612 (1976) (a limitation upon the amount that any one person or group may contribute to a candidate or political committee entails only a marginal restriction upon the contributor's ability to engage in free communication). "[T]he weighty interests served by restricting the size of financial contributions to political candidates are sufficient to justify the limited effect upon First Amendment freedoms." 424 U.S. at 29.

Since we find that Nichols has an appeal under the KJRA, it is not necessary to address his allegations of a violation of the rights of due process and equal protection that were premised on lack of available review.

Last, Nichols argues the trial court and this court erred in sealing the record. We disagree.

The CFA clearly provides that all records, complaints, documents, and reports filed with or submitted to or made by the Commission and all records and transcripts of any investigations, inquiries, or hearings of the Commission under the Act shall be confidential and shall not be open to inspection by any individual other than a member or employee of the Commission or a state officer or employee designated to assist the Commission. K.S.A. 25-4165. As quoted above in K.S.A. 25-4161(e), if the Commission finds probable cause exists for believing the allegations of a complaint, the complaint "shall no longer be confidential and may be disclosed."

The confidentiality provisions serve a necessary purpose in the Commission's investigation of complaints by helping to guard

against adverse effects of false allegations against a candidate or officeholder. The exposure of confidential information could well cause harm to the Commission's ability to conduct further investigations and obtain confidential information and could cause harm to the individual respondents whose identities would be made public by the unsealed inclusion of evidence in the record.

Nichols' arguments concerning the requirements for entering a restraining order or injunction under K.S.A. 60-901 *et seq.* are not relevant. The relief entered by the courts was to seal the record and require Nichols to preserve confidentiality as per the applicable statutes.

Affirmed in part, reversed in part, and remanded for proceedings pursuant to the Act for Judicial Review and Civil Enforcement of Agency Actions.