NOT DESIGNATED FOR PUBLICATION

No. 122,907

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STEPHEN MATTICE,
*Appellant*,

v.

CITY OF STAFFORD, KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Stafford District Court; STEVEN E. JOHNSON, judge. Opinion filed September 17, 2021. Reversed and remanded.

*Randall K. Rathbun* and *Dylan P. Wheeler*, of Depew Gillen Rathbun & McInteer, LC, of Wichita, for appellant.

*Allen G. Glendenning*, of Watkins Calcara, Chtd., of Great Bend, for appellee.

Before MALONE, P.J., WARNER and HURST, JJ.

PER CURIAM: Stephen Mattice appeals the district court's dismissal of his Amended Petition against the City of Stafford, Kansas (the City) for failure to state a claim upon which relief may be granted. Mattice alleges the City wrongly terminated his employment in retaliation for whistleblowing. The City argues Mattice has failed to adequately state a claim pursuant to K.S.A. 60-212(b)(6). We find that the Amended Petition states a claim for retaliatory discharge for whistleblowing sufficient to survive a

1

motion to dismiss. The district court's decision to dismiss the Amended Petition is reversed and the case is remanded for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

This court relies on the facts as provided by the plaintiff, Mattice. See, e.g., *Steckline Communications, Inc. v. Journal Broadcast Group of KS, Inc.*, 305 Kan. 761, 767-68, 388 P.3d 84 (2017) (in reviewing a dismissal for failure to state a claim "the court must decide the issue based only on the well-pled facts and allegations" of the plaintiff). According to the Amended Petition, the City hired Mattice as the Chief of Police in July 2018. The City Administrator, Jami Downing was Mattice's direct supervisor. The City terminated Mattice's employment on December 11, 2018. While employed as the Chief of Police, Mattice received a report from a former City police officer, who we will refer to as B.E., that another former City police officer, referred to as C.O., "had been caught having sexual intercourse with a minor under the age of consent while still employed with the Stafford Police Department."

After receiving the report, Mattice reviewed the police department records and "found no record of reprimand" in C.O.'s personnel file. Mattice alleges that he "believed the previous police chief violated the mandatory reporting requirement and regulations pertaining to law enforcement officers when he failed to report the allegations." Mattice told Downing about the allegations against C.O. and the failure of the Stafford Police Department to investigate. According to Mattice, Downing "downplayed the allegations." Downing questioned B.E.'s credibility and "discouraged Chief Mattice from pressing the issue any further." Downing told Mattice that "she would risk her job if anything happened to [C.O.] as a result of the investigation."

After reporting to Downing, Mattice reported the allegations to Corey Latham, the Director of the Kansas Bureau of Investigation (KBI) office in Great Bend. According to

2

the Amended Petition, the KBI "made a request to review [C.O.'s] personnel file, but no record of a reprimand in connection to allegations of [C.O.] sleeping with a minor was contained within." Mattice also "questioned Jami Downing as to why no official report of [C.O.'s] reprimand was contained in his personnel file."

According to Mattice, after reporting these concerns to Downing and the KBI, "Downing was upset with Chief Mattice for 'stirring the pot' by investigating [C.O.]." Mattice alleges that Downing, along with the former police Chief's sister, who was a current City employee, "threatened to turn Chief Mattice into the Department of Children and Families for 'neglect' of his minor child." Later, Chief Mattice reported "issues arising out of the [C.O.] investigation" to the City council, the mayor, and the City attorney. Three days later the City council voted to "allow Downing to take administrative action against Chief Mattice." Mattice's employment was terminated on December 11, 2018. Mattice alleges that he reported both "violations of the law" to Downing and "subsequent retaliation he faced from Downing" and that he "was retaliated against and ultimately terminated."

On January 24, 2019, Mattice first served notice of a claim to the City pursuant to K.S.A. 12-105b. Mattice filed a Complaint in the District of Kansas in June 2019 that was later voluntarily dismissed without prejudice. On August 9, 2019, Mattice filed the original Petition alleging retaliatory discharge for whistleblowing, which Mattice amended on November 5, 2019 (the Amended Petition). The City moved to dismiss the Amended Petition on November 18, 2019, alleging Mattice failed to state a claim upon which relief can be granted in violation of K.S.A. 60-212(b)(6). After complete briefing and oral argument, the district court granted the City's motion to dismiss and Mattice appealed.

3

DISCUSSION

This court exercises unlimited review over the district court's decision to grant a motion to dismiss for failure to state a claim. *Williams v. C-U-Out Bail Bonds*, 310 Kan. 775, 784, 450 P.3d 330 (2019). In our review, we must "assume as true the well-pled facts *and any inferences reasonably drawn* from them. [Citations omitted.]" (Emphasis added.) 310 Kan at 784. Accordingly, this court takes the facts and reasonable inferences from Mattice's Amended Petition as true, and "[i]f those facts and inferences state *any* claim upon which relief can be granted, dismissal is improper." 310 Kan. at 784. Kansas requires only notice pleading, which means the petition need only include a "short and plain statement of the claim showing that the pleader is entitled to relief" and a demand for relief. K.S.A. 2020 Supp. 60-208(a); see also *Oller v. Kincheloe's, Inc*., 235 Kan. 440, 447, 681 P.2d 630 (1984) ("there is no requirement that pleadings state facts sufficient to constitute a cause of action"). "The concept of notice pleading relies on its companion, discovery, to fill in the gaps." *Families Against Corp. Takeover v. Mitchell*, 268 Kan. 803, 809, 1 P.3d 884 (2000).

Dismissal is only warranted when it is clear from the petition that the plaintiff has no claim. See, e.g., *Steckline Communications, Inc*., 305 Kan. at 767-78. Dismissal for failure to state a claim "before utilization of discovery is seldom warranted." *Mitchell*, 268 Kan. at 809; see also *Boydston v. Board of Regents for State of Kan*., 242 Kan. 94, 101, 744 P2d. 806 (1987) ("Dismissal with prejudice is a drastic and final action. It is akin to entering default judgment" and "default judgments are not favored in law and any doubt should be resolved in favor of action which allows the case to be decided on its merits."). The Amended Petition contains facts and inferences to support a claim of retaliatory discharge for whistleblowing.

4

*The District Court Erred in Granting the City's Motion to Dismiss.*

Kansas has adopted the "at-will" employment doctrine, permitting employers and employees to terminate their employment relationship for any reason at any time—but there are some exceptions. See, e.g., *Goodman v. Wesley Med. Ctr.*, 276 Kan. 586, 592, 78 P.3d 817 (2003); see also, K.S.A. 44-1009(a)(1) (prohibiting an employer from terminating the employment of, or engaging in other adverse employment actions against, an employee because of the employee's race, religion, color, sex, disability, national origin, or ancestry). Kansas recognizes the claim of retaliatory discharge for whistleblowing as one of the exceptions to the "at-will" employment doctrine. *Connelly v. Kansas Highway Patrol*, 271 Kan. 944, 968, 26 P.3d 1246 (2001); *Palmer v. Brown*, 242 Kan. 893, 900, 752 P.2d 685 (1988). To sustain a claim for unlawful retaliatory discharge for whistleblowing, Mattice must show:

> "[A] reasonably prudent person would have concluded the employee's co-worker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee; and the employee was discharged in retaliation for making the report. However, the whistle-blowing must have been done out of a good faith concern over the wrongful activity reported rather than from a corrupt motive such as malice, spite, jealousy or personal gain." *Palmer*, 242 Kan. at 900.

At this early stage, before discovery is complete, Mattice need only assert facts and reasonable inferences that can support the retaliatory discharge claim—he need not prove each element either through the Amended Petition or in opposing a motion to dismiss. See, e.g., *Oller*, 235 Kan. at 447.

*1. "A reasonably prudent person would have concluded the employee's co-worker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare."*

The first element from *Palmer* requires that Mattice allege that he believed his "co-worker or employer was engaged in activities in violation of the rules, regulations, or the law pertaining to public health, safety, and the general welfare." 242 Kan. at 900. We will address this element in parts. First we will review Mattice's allegations about the activities that violated the law, and then we will identify the employer or coworker(s) responsible for the alleged violations.

*a. Mattice alleges "activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare."*

Drawing reasonable inferences from the Amended Petition, Mattice alleges at least the following *violations of rules or law pertaining to public safety* as required by *Palmer*:

1. That before and during his employment, his employer failed to investigate a reported crime, failed to report alleged abuse, and failed to properly discipline a police officer;
2. that Downing "discouraged" Mattice from investigating an alleged crime and reporting alleged abuse; and
3. that his employer tried to prevent Mattice from investigating an alleged crime and reporting alleged abuse by retaliating against Mattice through Downing being "antagonistic," having a City employee make child neglect allegations against his family, and ultimately terminating his employment.

A police officer, or other adult, having sex with a minor under the age of consent is a crime. See, e.g., K.S.A. 2020 Supp. 21-5503(a)(3) (prohibiting "sexual intercourse with a child who is under 14 years of age"); K.S.A. 2020 Supp. 21-5507 (prohibiting

6

"voluntary sexual intercourse;" "voluntary sodomy;" or "voluntary lewd fondling or touching" of a child who is 14 or 15 years of age); K.S.A. 2020 Supp. 21-5510(a) (prohibiting "employing, using, persuading, inducing, enticing or coercing a child under 18 years of age . . . to engage in sexually explicit conduct with the intent to promote any performance"). The duty of a police officer is the "prevention or detection of crime and the enforcement of the criminal or traffic laws." See K.S.A. 74-5602(g) (defining "Police Officer" or "law enforcement officer" in the Kansas Law Enforcement Training Act). Neither party has denied that police departments are supposed to investigate alleged crimes, including those committed by their own officers.

Additionally, police officers are mandated reporters of child abuse and neglect, including "sexual abuse." When any "law enforcement officer[]" "has reason to suspect that a child has been harmed as a result of physical, mental or emotional abuse or neglect or *sexual abuse*, the person shall report the matter promptly" to the Kansas Department for Children and Families, or "the appropriate law enforcement agency." (Emphasis added.) K.S.A. 2020 Supp. 38-2223(a)(1)(D), (c)(1). Sexual abuse is "any contact or interaction with a child in which the child is being used for the sexual stimulation of the perpetrator, the child or another person." K.S.A. 2020 Supp. 38-2202(gg). Sexual abuse also includes allowing or encouraging a child to engage in sexual acts that violate Kansas law. K.S.A. 2020 Supp. 38-2202(gg)(2).

The Amended Petition states that Mattice "believed the previous police chief violated the mandatory reporting requirement and regulations pertaining to law enforcement officers when he failed to report the allegations." The duty to report child abuse continued after C.O. was no longer employed by the Stafford Police Department. In fact, the "willful and knowing failure to make a report" and "[i]ntentionally preventing or interfering with the making of a report" are class B misdemeanors. See K.S.A. 2020 Supp. 38-2223(e). Thus, any officer that failed to report the alleged sexual abuse, and any

actions preventing or interfering with an officer reporting sexual abuse, could establish violations of rules or law pertaining to public safety.

The Stafford Police Department and its officers' failure to investigate an alleged crime, report alleged child abuse, and enforce criminal laws—in addition to any attempts to prevent Mattice from reporting alleged child abuse, investigating an alleged crime, and internal wrongdoing—could all constitute a violation of rules or law pertaining to public safety as required under the first element of *Palmer*.

### b. Mattice reported allegations against a "co-worker" and his "employer."

The City argues that Mattice fails to state a claim because the alleged wrongdoing of C.O. and the prior chief of police occurred before Mattice's employment, and thus any allegation against them does not involve a "*co-worker or employer*" as required by the standard in *Palmer*. 242 Kan. at 900. The City chooses to read the Amended Petition far more narrowly than required. Paragraphs 6, 10, and 13-15 of the Amended Petition allege that the Stafford Police Department failed to investigate a reported crime committed by its own officer. This failure continued through Mattice's employment—in particular, when Mattice discovered the inaction and began investigating the allegations himself. The police department's failure and continued refusal to investigate and report the alleged criminal conduct and child abuse of its officer could constitute violations by the *employer* as required by the standard in *Palmer*.

Mattice also alleges he was a "mandatory reporter" of child abuse and that during his employment he received a report of alleged child abuse. Mattice alleges that Downing "discouraged" Mattice from looking into the issue, retaliated against Mattice, and then retaliatorily terminated Mattice's employment. It is against the law to prevent or interfere with reporting child abuse. See K.S.A. 2020 Supp. 38-2223(e). Mattice's allegations against Downing are against a "co-worker" or "employer" as required under *Palmer*.

8

The City argues that Downing's actions toward Mattice cannot constitute a reportable violation under the *Palmer* standard because Downing did not give a "prospective order to ignore all violations of a particular law." The City contends that the Kansas Supreme Court's holding in *Connelly* requires a whistleblower receive a "prospective order" to not enforce violations. 271 Kan. at 969. In *Connelly*, the court explained that not every internal complaint is whistleblowing, but the officers' actions "openly denouncing and protesting within their chain of command to other 'law enforcement officials' illegal activity in not enforcing laws designed for public safety may be protected internal whistleblowing." 271 Kan. at 974. The *Connelly* decision does not require that the whistleblower object to a "prospective order."

The City also relies on *Shaw v. Southwest Kan. Groundwater Mgt. Dist. Three*, 42 Kan. App. 2d 994, 219 P.3d 857 (2009), to argue that Mattice is not a whistleblower because he did not seek to stop a "prospective order" from Downing. 42 Kan. App. 2d at 1002 ("the whistle blower must seek to stop unlawful conduct through the intervention of a higher authority, either inside or outside the company"). In *Shaw*, the whistleblower, Shaw, was a water conservationist for the Southwest Kansas Groundwater Management District Three (GMD). On March 17, 2004, Shaw identified a waste-water runoff violation by a landowner who happened to be the GMD board president. Shaw notified a supervisor who told Shaw not to send a formal notice of violation, the usual practice and statutory requirement, because the supervisor already notified the landowner/board president. A few weeks later, Shaw complained to a former co-worker about his supervisor's directive not to send a formal notice of violation to the board president. The GMD board investigated Shaw's complaint on April 30, 2004, and the supervisor terminated Shaw's employment on June 30, 2004. Shaw sued, claiming retaliatory discharge for whistleblowing. In *Shaw* there was no allegation that the supervisor gave a "prospective order" to ignore future, ongoing, or prospective wastewater violations—only that the supervisor told Shaw not to enforce the previous violation on March 17. The district court granted summary judgment to the employer finding that Shaw was required

9

to report to an external agency to be considered a whistleblower. A panel of this court reversed and remanded, finding internal reporting sufficient to sustain a whistleblower complaint and that the employer's other arguments for summary judgment were meritless. 42 Kan. App. 2d at 1004.

Following the City's argument to its logical conclusion would mean a police officer is only entitled to relief as a whistleblower if they are ordered not to enforce future violations of the law—but not when ordered to ignore past criminal conduct. This would create nonsensical results because almost every criminal investigation and legal enforcement proceeding involves past conduct. Requiring the whistleblower to seek to "stop unlawful conduct" distinguishes a mere workplace dispute from those disputes related to legal requirements that could constitute whistleblowing. See *Fowler v. Criticare Home Health Servs., Inc.,* 27 Kan. App. 2d 869, 876, 10 P.3d 8 (2000), *aff'd* 271 Kan. 715, 26 P.3d 69 (2001).

   2. *"The employer had knowledge of the employee's reporting of such violation prior to discharge of the employee."*

The next element from *Palmer* requires the employer had knowledge that the employee reported violations. 242 Kan. at 900. Through the Amended Petition and on appeal, Mattice alleges at least three incidents in which the employer had knowledge, and those include when:

1. Mattice reported to Downing that the Stafford Police Department failed to investigate an alleged crime, failed to report alleged child abuse, and failed to discipline alleged police misconduct;
2. Mattice reported to "the Director for the Kansas Bureau of Investigation's office in Great Bend" and the "KBI made a request to review [C.O.'s] personnel file." On

10

appeal, Mattice explains that he "informed the KBI of the alleged rape and the circumstances of his investigation that necessitated outside assistance"; and

3. Chief Mattice reported to the City council, the mayor, and the City attorney "concerns over the issues arising out of the [C.O.] investigation"; and on appeal explained that he requested to speak with officials "to discuss the City Administrator's orders to not perform criminal investigations of both former and current employees of the Stafford Police Department, and the campaign of harassment against him for having done so in violation of that directive."

Amended Petition Paragraphs 11, 15-16, and 28, and reasonable inferences, allege that Mattice's first report to Downing, as City Administrator, notified the employer. The Amended Petition does not specifically state if Mattice's employer knew about the second alleged report to the KBI and the resulting request for records. If there is a fact dispute about the employer's knowledge of the KBI report, that cannot be decided through a motion to dismiss. In the third alleged report, Mattice told the City council, the mayor, and the City attorney that "his work environment was being made extremely uncomfortable . . . over his investigation of [C.O.]." Mattice also reported "threats" against him and his family "over frivolous allegations of child neglect." At the latest, the City knew on December 7, 2018, that Mattice alleged Downing, the City police department, former officers, and others were engaged in violations of rules and law related to public safety.

The City claims Mattice makes new arguments on appeal about which of his actions constitute "reporting," and relies on *Ripley v. Tolbert*, 260 Kan. 491, 513, 921 P.2d 1210 (1996), to contend that this court may not consider those arguments. We disagree. On appeal, Mattice does not allege a different or new legal theory of recovery but summarizes how the facts of his case state a claim for retaliatory discharge for whistleblowing.

11

In *Ripley* the district court granted a motion to dismiss based on the statute of repose—a legal bar to the cause of action. The plaintiff argued, for the first time on appeal, that equitable estoppel and fraudulent concealment should prevent applying the statute of repose. 260 Kan. at 513. Similarly, in *Connelly* the plaintiff sought to argue the legal theory of "mutual mistake" on appeal, which the State contended was not argued at the district court. 271 Kan. at 962-63. Mattice's appeal relies on the same legal theory and facts set forth in the Amended Petition. The facts and arguments of a case necessarily evolve through discovery, and Mattice may develop his case through the litigation process. See *Oller*, 235 Kan. at 447 ("the pleader may allege or make contradictory or alternative statements until he finds out which theory, if any, the facts support, and is permitted to shift the theory as the facts develop").

At this early stage of litigation, before discovery and a pretrial order, the parties' theories may change. Mattice's Amended Petition and response to the City's motion to dismiss are not required to govern the entire case. See, e.g., *Williams*, 310 Kan. at 784 (the "pretrial order is the ultimate determinant as to the legal issues and theories on which the case will be decided") (quoting *Unruh v. Purina Mills*, 289 Kan. 1185, 1191, 221 P.3d 1130 [2009]). Mattice need only put forth enough "facts and inferences" to "state a claim on any possible theory." See *Mitchell*, 268 Kan. at 809. "The spirit of our present rules of civil procedure permits a pleader to shift the theory of his case as the facts develop so long as he has fairly informed his opponent of the transaction or the aggregate of the operative facts involved in the litigation." *Oller*, 235 Kan. at 447.

### 3. *The employee was discharged in retaliation for making the report.*

Mattice met with the City council, mayor, and City attorney on Friday, December 7, 2018, in which he reported alleged violations of law by his supervisor, Downing, and the Stafford Police Department, former officers, and others. On Monday, December 10, 2018, the City council met and voted to allow Downing "to take administrative action

against Chief Mattice." On Tuesday, December 11, 2018, Mattice refused to resign and his employment was terminated that same day. Mattice sufficiently alleges the final element of the *Palmer* test—that his employment was terminated in retaliation for whistleblowing.

CONCLUSION

When viewed in the light most favorable to Mattice, the Amended Petition meets the Kansas notice pleading requirements and asserts a claim for retaliatory discharge for whistleblowing. The Amended Petition apprises the City of the "transaction or the aggregate of the operative facts" supporting Mattice's claim and there is no surprise to the City. The district court's dismissal is reversed, and this case is remanded for further proceedings.

Reversed and remanded.